**In the Matter of Edward E. BAZAN, Debtor,**

**CREDITHRIFT OF AMERICA, INC., an Illinois Corporation, Plaintiff,**

v.

**Edward E. BAZAN, Isabel M. Bazan, Richard Knupp and Sherri Knupp, Defendants.**

**Bankruptcy Nos. 80 B 8164, 80 A 1211.**

United States Bankruptcy Court, N. D. Illinois, E. D.

Nov. 17, 1980.

Robert Morel Gray, Joliet, Ill., for Credithrift.

William A. Lester, Lombard, Ill., for Knupps.

Keith M. Aeschliman, Joliet, Ill., for Bazan.

## OPINION AND ORDER

RICHARD L. MERRICK, Bankruptcy Judge.

This cause came on to be heard upon the Court's rules on Credithrift of America, Inc. (hereinafter "Credithrift") and its attorney, Robert Morel Gray (hereinafter "Gray"), to show cause why each of them should not be held in contempt of this Court for filing in the Circuit Court of the Twelfth Judicial Circuit in Will County, Illinois, a Complaint in Replevin (W 80 LM 2596) against Richard and Sherri Knupp while the instant proceeding was pending in this Court.

The rules on Credithrift and Gray were issued prior to the time that any evidence was received in the case. The presumed facts are derived from allegations in the complaint and representations of counsel.

Fifteen months before filing a bankruptcy petition under Chapter 7 of the Bankruptcy Code, the debtor, Edward E. Bazan, is presumed to have conveyed certain household furnishings which were subject to a perfected security interest of Credithrift to Richard and Sherri Knupp as a part of the sale of Bazan's home to the Knupps. The Knupps were not told of Credithrift's lien on the furnishings (a pool table, bar, and bar stools). Bazan filed a petition in bankruptcy in June, 1980, without having paid the debt to Credithrift. Credithrift then began an adversary action in this Court naming Mr. and Mrs. Bazan and Mr. and Mrs. Knupp as defendants and requesting a money judgment of $1,536.83 against the Bazans and that it be given possession of the property held by the Knupps. At the hearing on September 22 on Credithrift's motion for a turnover order, the Court concluded that if given additional time the parties might be able to work out an equitable settlement or cite

legal authorities on the issue of subrogation. Rather than allow the matter to be continued, Gray moved to dismiss the Knupps as party defendants in the bankruptcy action to that he could file a replevin action against them in the state court. The Court continued the motion until November 6, 1980 and explained to Mrs. Knupp, who was appearing *pro se*, that Gray could not proceed in state court until the bankruptcy action was dismissed. The Court announced its intention to dismiss the suit against the Knupps if the parties had not reached a settlement by the next scheduled hearing date on November 6. Gray was standing beside Mrs. Knupp at the time and offered no objections. The next day, however, he filed a replevin action in state court which resulted in the entry of a writ of replevin on November 3.

It appears that Gray told the state court judge that this proceeding is an *in personam* proceeding, which would not necessarily preclude the institution of a second suit involving the same subject matter. With respect to the Bazans, it is both an *in rem* proceeding and an *in personam* proceeding. The complaint seeks from them the furniture which they still held plus damages for that which they no longer hold. With respect to the Knupps, the proceeding is strictly *in rem* and seeks only physical recovery of the furniture, as shown by the transcript:

> "Mr. Gray: Your Honor, we are here today applying for a turn–over order in this matter. We have inspected the property . . . We are asking that the Court enter a turn–over order authorizing us to pick up the property next Wednesday, and authorizing the Knupps to give us whatever assistance is necessary to pick up the property in the event they refuse to turn it over." (Report of Proceedings of September 22, 1980, page 2).

> "Mr. Gray: . . . They are third parties who are in possession of the property. Credithrift wants the property . . . they are in possession of the property that we have under a filed financing statement." (Record of Proceedings of September 22, 1980, page 4).

The draft order submitted by Gray along with his motion for a turnover order provides in pertinent part as follows:

> " . . . The Court . . .
>
> DOES FIND THAT the defendants, RICHARD and SHERI KNUPP have admitted in open court to being in possession of the bar and bar stools and pool table as prayed in the complaint and the Court having found that the plaintiff, CREDITHRIFT OF AMERICA, INC. has a superior right to and in the possession of said terms,
>
> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT SHERI KNUPP and RICHARD KNUPP be and they are hereby ordered and directed to release possession of the bar, bar stools and pool table to the plaintiff, CREDITHRIFT OF AMERICA, INC. forthwith. [sic] and futher [sic] that the United States Marshall be and he is hereby directed to assist the plaintiff in obtaining possession of said items."

At the November 6 hearing on this Court's rules that Credithrift and Gray show cause why they should not be held in contempt of court for prosecuting the replevin action, Gray offered three explanations (excuses?, defenses?) for his act of filing the state court replevin suit:

1. This Court does not have jurisdiction over the furniture because it does not belong to the bankrupt.

2. This is not an *in rem* proceeding because the United States Marshall does not have the authority to seize the furniture as a means of enforcing a decree of this Court, and

3. This Court does not have exclusive jurisdiction over the furniture but only concurrent jurisdiction.

Gray averred that immediately after this Court stated that he could not institute a state court replevin proceeding, he looked up the law, concluded that this Court was wrong, and filed his replevin suit. The fine which this Court will impose in this order is in part a warning to lawyers and to litigants that they act at their peril when they flout directives of the Court.

"The Court ... If it is not dismissed in this Court they cannot go into state court.

So that as I see it they cannot do anything in the state court until November 6th. On November 6 we will decide what we are going to do. I am not going to continue it beyond November 6th. I don't think.

So that if by that time it has not been resolved, the probabilities are that I will dismiss it and they can go into state court."

(Record of proceedings of September 22, 1980, pages 14 and 15).

Because the question of this court's jurisdiction is fundamental to any decision in this case, that issue will be considered first.

Gray suggests that this court lacks jurisdiction because the debtor, Bazan, no longer has any legal interest in the property that is the subject of Credithrift's suit. Gray fails to recognize that the Bankruptcy Reform Act of 1978 made sweeping changes to the jurisdiction of the Bankruptcy Court. The nature of the court's jurisdiction over property is no longer determined by the debtor's possession of the property. Formerly an action such as this, in which the property in question had been transferred by the debtor to a third party many months before bankruptcy, would have been characterized as a matter of plenary jurisdiction to be heard only by a state court or a federal district court. *Cline v. Kaplan*, 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97 (1944); *In re American Natl. Trust*, 426 F.2d 1059 (7th Cir. 1970).

But in an attempt to end the mass of jurisdictional litigation that has plagued the Bankruptcy Courts for years, Congress has abolished the distinction between summary and plenary jurisdiction. The Bankruptcy Court has been given an expended jurisdiction covering not only cases brought under Title 11 of the United States Code, but also over "all civil proceedings ... related to cases under Title 11." 28 U.S.C. § 1471(b) (Supp. II 1978). *See generally* 1 Collier on Bankruptcy ¶ 3.01 (15th ed. 1979); Kennedy, *The Bankruptcy Court Under the New Bankruptcy Law: Its Structure, Jurisdiction, Venue and Procedure*, 11 St. Mary's L.J. 251 (1979). Commentators have said that "[c]onceptually, there is no limit to the reach of this jurisdiction, insofar as the matter involved 'arises in or [is] related to' the Title 11 case." 1 Collier on Bankruptcy, ¶ 3.01 at 3–49 (15th ed. 1979).

Therefore this Court has jurisdiction over Credithrift's suit against the Bazans because Bazan is a debtor under Title 11 of the U.S.Code. The Court has jurisdiction over the suit against the Knupps because it is a civil proceeding related to a case under Title 11. The Knupp matter is related to the Bazan bankruptcy because the personalty that is the subject of the suit was owned by Bazan and was used to secure his indebtedness on the promissory note to Credithrift. There has been no evidence presented as to the terms of the contract between the Bazans and the Knupps for the sale of the house and the furniture. Thus the Court has no assurance that the real estate transaction actually conveyed all of the Bazans' right, title, and interest in the personalty to the Knupps. If it did not, the Bazans would have retained at least an equitable interest in the property, an interest that would become property of the estate on the date of filing of the bankruptcy petition. 11 U.S.C. § 541 (Supp. II 1978). Also, the transaction between the Bazans and the Knupps raises a question as to possible fraud on the interests of both Credithrift and the Knupps—something that could result in future liability to the estate if the debts were found not dischargeable. Furthermore, the personal property would revert to the Bazans in the event that the Knupps rescinded the sale on the grounds of fraud.

Collier states that "there must be some reasonable nexus between a particular civil proceeding and the title 11 case to bring that proceeding within the section 1471(b) grant of jurisdiction ... The criterion to be adopted in such a situation will undoubtedly be related to a determination of whether the outcome of the proceeding could conceivably have any effect upon the estate being administered." 1 Collier on Bankruptcy ¶ 3.01 at 3–49 (15th ed. 1979).

The Court has determined that the outcome of Credithrift's efforts to recover the property in question could conceivably have an effect on the administration of the debtor's estate, and thus the suit involving the Knupps is sufficiently related to the Bazan bankruptcy to come within the grant of jurisdiction in 28 U.S.C. § 1471.

 While Credithrift's suit consists of two related actions, the legal character of those actions differ. Credithrift requested a judgment on the personal liability of the Bazans for the amount owed on the promissory note. It is an *in personam* action with regard to the Bazans. Credithrift also requested a judgment declaring its right to possession of certain personal property in the possession of the Knupps. The action is thus *in rem* with regard to the Knupps.

This distinction is important because under § 1471(b) bankruptcy court jurisdiction over civil proceedings "related" to a bankruptcy case is non-exclusive and may be shared with the state courts. 28 U.S.C. § 1471(b)(Supp. II 1978). The legislative history shows, however, that the language making this jurisdiction non-exclusive was a necessary corollary to the provision of § 1471(d) allowing the bankruptcy court to decline to hear a proceeding over which it had jurisdiction. 1 Collier on Bankruptcy ¶ 3.01 at 3–39 (15th ed. 1979). The intent of Congress was "to bring all litigation within the umbrella of the bankruptcy court" unless the court chooses to abstain. *Id.* at 3–40.

Gray's argument that this is not an *in rem* proceeding because the United States Marshall does not have authority to seize the *res* is too puerile to justify discussion. The yardstick is whether a court has the authority to *decide* the issue of title or right to possession of property, not whether a given public official has the authority to enforce that decision. But contrary to Gray's assertion, the U.S. Marshalls do have statutory authority to seize property if such action is pursuant to an order of a federal court under the laws of the United States. 28 U.S.C. § 569(b) (Supp. II 1978). In order to carry out such an order, the U.S. Marshalls may exercise the powers of a sheriff of the state in which the U.S. District Court sits. 28 U.S.C. § 570 (Supp. II 1978).

It is clear that the Congress did not intend to change the well established rule that where two *in rem* or *quasi in rem* actions are brought, one in a state court, the other in federal court, the first court to assume jurisdiction over the *res* that is the subject of the two suits may maintain and exercise jurisdiction to the exclusion of the other.

This Court chose not to enjoin the filing of a state court replevin proceeding because it did not believe that Gray would have the brass to proceed in that manner. In *Mandeville v. Canterbury*, 318 U.S. 47, 48, 49, 63 S.Ct. 472, 473, 87 L.Ed. 605 (1942), the United States Supreme Court emphasized the injunctive power under the Bankruptcy Act, where the jurisdiction of the Bankruptcy Court was narrower than it is under the present Bankruptcy Code:

"Section 265 of the Judicial Code, 28 U.S.C. § 379, provides that except as authorized by any law relating to proceedings in bankruptcy 'the writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State.' To this sweeping command there is a long recognized exception that if two suits pending, one in a state and the other in a federal court, are *in rem* or *quasi in rem*, so that the court or its officer must have possession or control of the property which is the subject matter of the suits in order to proceed with the cause and to grant the relief sought, the court first acquiring jurisdiction or assuming control of such property is entitled to maintain and exercise its jurisdiction to the exclusion of the other.

In such cases this Court has uniformly held that a federal court may protect its jurisdiction thus acquired by restraining the parties from prosecuting a like suit in a state court notwithstanding the prohibition of § 265. This exception to the prohibition has been regarded as one of necessity to prevent unseemly conflicts between the federal and state courts and to prevent the impasse which would arise if

the federal court were unable to maintain its possession and control of the property, which are indispensable to the exercise of the jurisdiction it has assumed."

Another statement of the United States Supreme Court to the same effect can be found in *Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939), at p. 466, 59 S.Ct. at p. 280:

"On the other hand, if the two suits are *in rem*, or *quasi in rem*, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought the jurisdiction of the one court must yield to that of the other. We have said that the principle applicable to both federal and state courts that the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other, is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted, but applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property. The doctrine is necessary to the harmonious cooperation of federal and state tribunals." [footnotes deleted].

Another expression of the same principle by that same controlling court is in *Penn General Casualty Co. v. Pennsylvania*, 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850 (1935), at page 195, 55 S.Ct. at page 389:

"But, if the two suits are *in rem* or *quasi in rem*, requiring that the court or its officer have possession or control of the property which is the subject of the suit in order to proceed with the cause and to grant the relief sought, the jurisdiction of the court must of necessity yield to that of the other."

See also *In re Washington*, 623 F.2d 1169 (6th Cir. 1980).

If this Court had the authority to enjoin the filing of a state court proceeding, it necessarily had the lesser powers required to maintain the integrity of its own process. It has been this Court's practice, speaking metaphorically, not to flex its muscles just to show that they exist. When the Court states what attorneys may do or may not do, it expects that the attorneys will take heed and almost without exception they do.

■ Turning to another of Gray's arguments, the Court should point out that a plaintiff has no inherent right to summarily drop a single defendant in a multi–defendant lawsuit. Except possibly by amendment under Rule 15(a) of the Federal Rules of Civil Procedure, incorporated by reference into Rule 715 of the Rules of Bankruptcy Procedure, prior to the serving of a responsive pleading, parties may not be added or dropped except by order of the court. *Age of Majority Educational Corp. v. Preller*, 512 F.2d 1241 (4th Cir. 1975); *United States v. Wyoming Natl. Bank of Casper*, 505 F.2d 1064 (10th Cir. 1974); 3A Moore's Federal Practice, ¶ 12.05 (2d ed. 1979); Wright & Miller, 7 Federal Practice & Procedure: Civil ¶ 1688 (1972). Here the Bazans filed a formal answer by their attorney, while the Knupps, acting pro se, answered the complaint by letter sent to Gray, who acknowledged receiving the letter and indeed characterized it as an answer. The Court is satisfied that the Knupps' letter fulfills the requirements of Rule 708 of the Rules of Bankruptcy Procedure, and it will be deemed to be an answer for the purposes of this suit.

■ The power of a court of equity to enjoin persons subject to its jurisdiction from conducting vexatious and harassing litigation in another forum has never been doubted. The Court may exercise this power to prevent a multiplicity of suits or to protect its exclusive jurisdiction over the *res* in actions *in rem*. *Mandeville v. Canterbury, supra; Robertson v. Natl. Basketball Ass'n*, 413 F.Supp. 88 (S.D.N.Y. 1976). While it is true that the Court did not directly order Gray not to file the replevin suit in state court, the Court made it clear while addressing Mrs. Knupp, standing next to Gray, that Credithrift should not proceed in state court while there was a similar

proceeding pending in the Bankruptcy Court. If Gray did not understand the Court's position on the question of his bringing an immediate replevin suit, he could have asked for a clarification; he could have objected if he did not agree. Yet Gray remained silent, and the Court had no reason to expect that he would either misunderstand its views or blatantly disregard them.

The Court has determined that it does have jurisdiction over the property that is the subject of the suit against the Knupps; that the suit is in the nature of an action *in rem* ; that the action in the Court was filed before the replevin suit in state court; and that this Court's jurisdiction over the *res* is thus exclusive. The state court was without jurisdiction to entertain the replevin suit; its decree is void and of no effect, as is any warrant based upon it. This Court will not stand by idly while Credithrift and Gray prosecute a replevin suit in another forum that would effectively remove from this Court's exclusive jurisdiction the property that is the subject of this suit.

It has become apparent to the Court that Gray's zeal to have his own way is exceeded only by his poor sense of propriety. At best his actions show bad judgment; at worst they show bad faith. The Court believes that whatever Gray's motives, disciplinary measures are called for.

For the foregoing reasons the Court finds Credithrift of America, Inc. and its attorney, Robert Morel Gray, to be in contempt of this Court. It is therefore ordered that Credithrift pay a fine to the Clerk of the United States Bankruptcy Court in the amount of ONE HUNDRED DOLLARS ($100.00) and that Robert Morel Gray pay a fine in the amount of ONE HUNDRED FIFTY DOLLARS ($150.00).