**FRANKFORD TRUST COMPANY**

v.

**Marvin ALLANOFF, et al.**

**Civ. A. No. 82–3275.**

United States District Court, E.D. Pennsylvania.

April 1, 1983.

Marvin Katz, Philadelphia, Pa., for Eugene Rubin and Gary Gordon.

John Francis Gough, Philadelphia, Pa., for Frankford Trust Co.

Rush T. Haines, II, Philadelphia, Pa., for Founders Federal Sav. and Loan.

Marvin Allanoff, pro se.

Nathan B. Feinstein, Philadelphia, Pa., for Dublin Properties.

## MEMORANDUM

GILES, District Judge.

This is an appeal from that part of an order of the Honorable Emil F. Goldhaber, Bankruptcy Judge, entered on June 9, 1982, holding appellants, Gary Gordon and Eugene Rubin, in contempt of the Bankruptcy Court "for their willful violation of the automatic stay provisions of the Bankruptcy Code" and directing each to pay a $150.00 fine. Oral argument was held November 11, 1982. For the following reasons, appellants' argument is sustained and the contempt Order reversed and vacated.

### Background

The facts are not in dispute. Eugene Rubin, Gary Gordon and Marvin Allanoff formed a limited partnership named Dublin Properties to develop a homebuilding project in Upper Dublin Township, Montgomery County, Pennsylvania. The partnership obtained construction financing

from two banks, Frankford Trust Company and Olney Federal Savings and Loan Association (hereinafter "Banks"), secured by personal guaranty and surety agreements ("guaranties") executed by the general partners and their wives. On November 17, 1980, Dublin Properties filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. Prior to the commencement of the Chapter 11 proceedings, the Banks had entered judgments in the Montgomery County courts on their four mortgage notes and guaranties. Subsequently, the Banks instituted adversary proceedings in the Bankruptcy Court seeking relief from the automatic stay to permit them to continue with mortgage foreclosure proceedings against Dublin Properties. The adversary proceedings were consolidated for purposes of trial and after extensive hearings terminated on July 31, 1981, with the entry of a consent judgment approved by Judge Goldhaber.

As part of that consent judgment, the Banks agreed "to assign and convey to the [Dublin] Estate all of [the Banks'] right and interest, if any" in the guaranties and judgments held by them against Gordon, Rubin and their wives. *See* Consent Judgment ¶¶ 7 and 15. However, the consent judgment released Allanoff and his wife from liability on their debts owed to the Banks. *Id.* ¶¶ 4, 5, 6, 10, 13(a) and 14. Both Gordon and Rubin were aware of the terms of the consent judgment; their attorney had appeared at the hearing and argued at length to the effect that it was improper for the Bankruptcy Court to approve the release of the Allanoffs' guaranty obligations and judgments while not only retaining the guaranty obligations of the Gordons and Rubins, but assigning them to the bankrupt estate.

On September 23, 1981, after the Banks' foreclosure and Sheriff sale, Gordon and Rubin wrote to the Banks demanding that the judgments held by them on their guaranties be marked satisfied. They contended

that the releases by the Banks of the debtor, Dublin Properties, and the Allanoffs, precluded the Banks from asserting any claim against Gordon and Rubin as guarantors of the debtor. The Banks and debtor refused to have the judgments marked satisfied on the grounds that it would be prohibited by the stay provisions of the Bankruptcy Code inasmuch as equitable title to the guaranties and judgments was in the debtor's estate. Gordon and Rubin then filed petitions in the Montgomery County Court to compel satisfaction of those judgments, or in the alternative, to open the judgments.

The Dublin Estate, claiming that it was the equitable holder of the guaranty judgments by virtue of the consent judgment, removed the actions to the Bankruptcy Court and on the same day filed, *inter alia,* an application for an order to show cause why Gordon and Rubin should not be held in contempt for violating the automatic stay provisions of the Code. On June 9, 1982, without issuing an order to show cause or conducting a hearing, Judge Goldhaber held Rubin and Gordon in contempt of court and fined each of them $150.00, ruling that the filing of the petitions in state court to compel satisfaction of judgment by the Banks violated the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362 (1979). The instant appeal followed.

## DISCUSSION

▮ In order to hold a person in contempt the court must find that (a) there was a "specific and definite" order of the court that the person has violated, and (b) the person had actual knowledge of that order. *In re Abt,* 2 B.R. 323, 325, 5 B.C.D. 1237 (Bkrtcy.E.D.Pa.1980); *In re Demp,* 23 B.R. 239, 240, 9 B.C.D. 838 (Bkrtcy.E.D.Pa. 1982). Gordon and Rubin clearly had knowledge that Dublin Properties had sought relief under the Bankruptcy Code,[1]

---

1. It has been held that the automatic stay provisions of the Code and the Bankruptcy Act are specific and definite orders which, if knowingly violated, are enforceable by the court's con-

tempt power. *See, e.g., Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47, 51 (2d Cir.1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977); *In re Abt.*

*cf., In re Abt,* (at time of repossession, creditor had no actual knowledge that debtor had filed for bankruptcy) and knowledge of the consent judgment.[2] The issue becomes whether appellants violated the automatic stay provisions of the Code when they filed petitions in state court requiring the Banks to mark as satisfied those judgments which the Banks had previously agreed to assign to the debtor's estate.

Section 541(a)(7) of the Bankruptcy Code, 11 U.S.C. § 541(a)(7), provides that "property of the estate" includes "[a]ny interest in property that the estate acquires after the commencement of the case." Section 362(a)(3) of the Code provides for an automatic stay of "[a]ny act to obtain possession of property of the estate or property from the estate." These provisions should be read in conjunction with the parties' consent judgment which provides that the Banks agreed to assign to Dublin Properties their respective interests, "if any," in the appellants' guaranty judgments.

■■■ The long-standing, salutary rule in contempt cases is that ambiguities in orders redound to the benefit of the person charged with contempt. *Ford v. Kammerer,* 450 F.2d 279, 280 (3d Cir.1971) (per curiam). Gordon and Rubin contend that their petitions against the Banks in Montgomery County seeking to have the guaranty judgments marked as satisfied would violate the automatic stay only if the anticipated assignments of the judgments were property of the Dublin Estate. Secondly, they assert that § 362(a)(3) only prohibits an attempted seizure of property from the estate. Since their petitions were not an attempt to obtain possession of any property of the estate but merely to test the existence of any interest possessed by the Banks after the Sheriff's sales, there was no violation of § 362.

Whether or not this characterization is accurate, taken as a whole, the automatic stay provision of the Bankruptcy Code, read in conjunction with the wording of the consent judgment, was not sufficiently definite and specific so as to warrant a conclusion that appellants' actions were in contempt of court. Judge Goldhaber himself reasoned:

> "[w]hile we agree that the action taken by Gordon and Rubin, is technically, not an action to obtain possession of the property of the estate (*i.e.,* the judgments), it *is* an action to deprive the estate of that property." (emphasis in original).... Thus, we conclude that the action of Gordon and Rubin is a clear violation of the spirit, if not the exact language, of the automatic stay provision of the Code. Opinion at pp. 6–7.

Appellees argue that there was in fact a property interest held by the estate and that the only issue was whether the interest was enforceable. However, the court is not satisfied that the ownership and possession of this equitable interest was unquestioned or unquestionable. *See In re Rubin,* 378 F.2d 104, 108 (3d Cir.1967) (contempt improper where questionable whether retail routes were "property" of the debtor). *See also* 42 Pa.C.S.A. § 8104 pursuant to which appellants filed their petitions in state court (judgment creditor required to mark as satisfied a judgment which has, in fact, been satisfied or suffer substantial penalties). The consent judgment read that the Banks were to assign to the estate their respective interests, "*if any.*" (emphasis added). Moreover, Judge Goldhaber acknowledged that he was not deciding the issue raised by the appellants' petitions in state court, namely "whether the judgments are enforceable now that the Banks have released the debtor and Allanoff from any liability on the debt." The Third Circuit has found that a contempt proceeding is inappropriate to resolve the underlying legal issue relating to the ownership of property. *In re Rubin,* 378 F.2d at 108–09. Though the method used by appellants to resolve this issue may have been ill-advised and contrary to the spirit of the Bankruptcy Code's automatic stay provisions, I find that con-

---

2. Though I find it disturbing that a consent judgment was approved without the consent of all parties affected by it, consent to a court's order is not a prerequisite to a finding of contempt.

tempt was inappropriate under the circumstances.

■ The court is drawn to this conclusion by a further consideration. Section 105(a) of the Bankruptcy Code, 11 U.S.C. § 105(a), has been interpreted to confer jurisdiction on the bankruptcy courts to punish contempts. *See Fernos-Lopez v. U.S. Dist. Court for Dist. of Puerto Rico,* 599 F.2d 1087 (1st Cir.1979), *cert. denied,* 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 189 (1979); *In re Sterling,* 125 F.2d 104 (9th Cir.1942). Section 105(a) provides that "[t]he bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." [3] However, section 1481 of Title 28, Judiciary and Judicial Procedures, limits the court's power to punish for criminal contempt. "A bankruptcy court shall have the powers of a court of equity, law and admiralty, but *may not ... punish a criminal contempt not committed in the presence of the judge* of the court or warranting a punishment of imprisonment." (emphasis added). *See In re Stacy,* 21 B.R. 49, 52 (Bkrtcy.W.D.Va.1982); *In re Reed,* 11 B.R. 258, 7 B.C.D. 777 (Bkrtcy.Utah 1981); *In re Eisenberg,* 7 B.R. 683, 691 (Bkrtcy.E.D.N.Y. 1980). The instant actions of appellants were not committed in the presence of the court and thus criminal contempt would be inappropriate. However, by looking primarily to the purpose and character of the sanctions imposed, rather than to its form and severity, *Pittsburgh-Des Moines Steel v. United Steelworkers,* 633 F.2d 302, 311 (3d Cir.1980), it would appear that the thrust of the decree is criminal in nature.

■ The differences between civil and criminal contempt have often been stated. *See, e.g., Latrobe Steel Co. v. United Steelworkers of America,* 545 F.2d 1336, 1343–44 (3d Cir.1976); *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 441–451, 31 S.Ct. 492, 498–502, 55 L.Ed. 797 (1911); *Norman Bridge Drug Co. v. Banner,* 529 F.2d 822, 827–28 (5th Cir.1976). Here, there are characteristics of the contempt order at issue which would indicate that it was civil in nature. For instance, the contempt proceedings were initiated by appellees rather than by the court on an order to show cause. Secondly, they were handled as part of an ongoing bankruptcy proceeding rather than as a separate action. *See Wakefield v. Housel,* 288 F. 712 (8th Cir.1923). However, the sanctions imposed were punitive, not remedial. *Cf. In re Jolly Joint, Inc.,* 23 B.R. 395, 403, 9 B.C.D. 841 (Bkrtcy.E.D.N.Y. 1982). Similar to findings of the court in *Pittsburgh-Des Moines Steel,* where the contempt was found to be criminal in nature, the Bankruptcy Court denominated the $150 payments as fines which were specific amounts payable to the Clerk of the United States Bankruptcy Court rather than compensatory fines payable to the complainant.[4] *Compare Norman Bridge,* 529 F.2d at 828 ($500 joint fine disbursed to plaintiff); *Matter of Batla,* 12 B.R. 397 (Bkrtcy.Ga.1981) (where creditor's non-compliance with court's orders resulted in debtor's being fired from $30,000 a year job, remedial relief for contempt would be to impose a fine *for use of debtor* measured in some degree by pecuniary injury caused); *In re Stacy* (measure of compensatory fines is actual damages done to complainant); *Morehouse v. Giant Powder Co.,* 206 F. 24,

---

**3.** A bankruptcy court's contempt powers have been drawn into question by the Supreme Court's recent decision in *Northern Pipeline Co. v. Marathon Pipe Line,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). At least one district court has since held that the provision giving civil contempt powers to non-Article III bankruptcy court judges is unconstitutional. *See Cryts v. Lindsey,* 24 B.R. 930 (D.C.E.D.Ark. 1982). However, *Northern Pipeline* is not retroactive. Thus, it is unnecessary to determine its affect on this case since the order appealed from was issued prior to that decision.

**4.** Though it has been said that coercive civil contempt fines in federal court are ordinarily paid to the United States, *Winner Corporation v. H.A. Caesar & Co., Inc.,* 511 F.2d 1010, 1015 (6th Cir.1975), the fines in this case were neither coercive nor remedial. *But see In re Reed,* 11 B.R. 258, 7 B.C.D. 777 (Bkrtcy.Utah 1981) (*In terrorem* fines, versus punitive damages, used as deterrent where there is a proclivity for future misconduct, may be appropriate).

26–27 (9th Cir.1913). There is no provision for the remission of these fines to appellants depending on future events, thus, their collection would confer no remedial or compensatory benefit upon appellees, the aggrieved parties. No coercive effect resulted from the order since the petitions by Gordon and Rubin had already been removed from state court to the federal bankruptcy court and the fines were unconditional. Finally, the order makes no reference to future sanctions or penalties which the court would impose if appellants were to deviate from a particular course. *Compare Latrobe,* 545 F.2d at 1345 (additional fine of $10,000 per day to be triggered only by future intransigence of contemnor indicative of civil contempt judgment); *Woods v. O'Brien,* 78 F.Supp. 221 (D.Mass.1948) (in petition for civil contempt, court imposed fine of $50, $5 payable to petitioner and $45 payable to the United States within thirty days unless defendant purged herself of contempt by complying with court's previous order). There are also indications that one of the primary concerns of the court was the vindication of its authority.[5]

Applying the above factors as outlined in *Latrobe Steel,* the contempt judgment in this case is inherently criminal rather than civil.[6] Accordingly, it was beyond the jurisdiction of the Bankruptcy Court to impose and cannot stand.[7] The relatively low monetary fines adjudged against Gordon and Rubin do not alter the nature of the contempt nor the seriousness of the resulting

order. Accordingly, the contempt order is reversed and vacated.

---

5. In addition to stating that appellants' actions were "in clear violation of the spirit . . . of the automatic stay provisions," Judge Goldhaber stated that "[the appellants'] action may interfere with the administration of the estate by possibly creating conflicting decisions in this court and the state court. As such, we conclude that the action taken by Gordon and Rubin is subject to our contempt power." Opinion at p. 7.

6. In *In re Demp,* 23 B.R. 239, 9 B.C.D. 838 (Bkrtcy.E.D.Pa.1982), the bankruptcy court assessed a fine and awarded counsel fees when the contemnor violated the stay provisions of the Code. However, in *Demp,* the court ordered counsel for the creditor to pay $250 to the Clerk of the United States Bankruptcy Court, of which the Clerk was to retain $50 as representing the fine imposed upon counsel,

the remainder to be awarded as a counsel fee to opposing counsel. 23 B.R. at 240. No such allocation of fines was made in this case. *But see In Matter of Bazan,* 6 B.R. 937, 6 B.C.D. 1345 (Bkrtcy.N.D.Ill.1980) (creditor and attorney found in contempt for violating automatic stay fined $100 and $150 respectively made payable to the Clerk of the United States Bankruptcy Court).

7. Even if this were a contempt committed in the presence of the bankruptcy judge and thus subject to criminal contempt powers, stricter compliance with procedural safeguards would have been required in order for the judgment to stand. *See Gompers,* 221 U.S. at 444, 31 S.Ct. at 499; *Pittsburgh-Des Moines Steel,* 633 F.2d at 310, *Fernos-Lopez,* 599 F.2d at 1091. *See generally* 5 Moore's Federal Practice ¶ 38.33[2] (2d ed. 1982).