LAY, Chief Judge.
On August 11, 1980, Cox and Frisbee Cotton Companies filed a voluntary chapter 7 bankruptcy proceeding. Thereafter, upon the debtors’ motion, the proceeding was converted to a chapter 11 reorganization. Robert Lindsey was appointed as trustee under chapter 11.
*621 Debtors’ assets consisted primarily of grain storage facilities. The ownership of the grain therein — some 3.27 million bushels — was subject to dispute. Wayne Cryts had stored 31 thousand bushels of soybeans in debtors’ Ristine, Missouri, elevator, though he did not have clear title to this grain. Cryts had pledged the negotiable warehouse receipts issued by debtor to Commodity Credit Corp.
On September 23, 1980, the trustee sought authorization from the bankruptcy court, pursuant to 11 U.S.C. § 363, to sell the grain in debtors’ facilities. The liens and ownership claims were to attach to the proceeds of the sales. Various farmers, including Cryts, filed objections. In addition, the State of Missouri commenced five separate Missouri state court receivership actions and obtained ex parte injunctions on October 20, 1980, against the trustee and the bankruptcy court, which enjoined them from exercising jurisdiction over the grain. The next day the State of Missouri received an ex parte stay order from this court, which operated as a blanket stay of all proceedings in the bankruptcy court. This court then entered an order on April 8, 1981, sustaining the jurisdiction of the bankruptcy court. State of Missouri v. United States Bankruptcy Court, 647 F.2d 768 (8th Cir.1981).
On May 18, 1981, the bankruptcy court held a hearing to determine whether the Missouri grain should be sold free and clear of all liens and interests. The evidence revealed substantial, conflicting claims of various types to all the Missouri grain. Additionally, the condition of the grain was poor and was rapidly deteriorating. The bankruptcy court thus authorized the trustee to sell the Missouri grain, with all claims and liens to attach specifically to the net sale proceeds. This order was not appealed.
The trustee contracted to sell the grain to Bearhouse, Inc. To prevent the sale of the 31 thousand bushels that Cryts claimed an interest in, Cryts and others unlawfully took possession of an elevator in Bernie, Missouri, and removed at least 31 thousand bushels of soybeans. The immediate loss to debtors was approximately 1218,00o.[1]
The trustee moved in the bankruptcy court to hold Cryts and others in civil contempt for the removal of the grain from the Bernie elevator. The court conducted hearings over a seven-month period and eventually concluded, on June 7, 1982, that Cryts and others had conspired to deprive the trustee of the property of the estate when they were fully aware that the grain was in the control and jurisdiction of the bankruptcy court. The fine imposed was the losses and expenses of the estate plus interest, which totaled $287,708. To induce compliance, the court also assessed a penalty of $1,500 per day from the date of its contempt judgment.
Cryts and others appealed this contempt judgment to the district court, challenging the bankruptcy court’s jurisdiction to authorize the sale of the grain and exercise civil contempt powers. The district court held that the bankruptcy court had jurisdiction to authorize the sale of the grain, but further held that the contempt power exercised by the bankruptcy court was unconstitutional because of its Article I status. The district court then held its own civil contempt hearing in February of 1983, which resulted in a civil contempt judgment against Cryts only. The others subject to the bankruptcy court’s contempt judgment either were found in contempt but no monetary judgment assessed or were found not in contempt. The fine imposed against Cryts was $272,550 plus interest from the date of the bankruptcy court’s judgment.
On appeal, the trustee asserts that the district court erred in holding the bankruptcy court lacked constitutional authority to exercise contempt power, that Cryts is es- *622 topped to challenge the bankruptcy court’s contempt power, and that the district court erred in not making its order prospective. On cross appeal Cryts contends that the bankruptcy court lacked jurisdiction to sell the grain and therefore there was no authority for the court to hold Cryts in contempt.
I. Bankruptcy Court Jurisdiction
We address the issue raised on the cross appeal first. Cryts argues that the bankruptcy court only had preliminary jurisdiction over the grain to determine ownership. This court, in its April 8, 1981, opinion, 647 F.2d 768, stated that the trustee’s interest in the grain was “sufficient to trigger preliminary jurisdiction over the property in the bankruptcy court.” Id. at 774. We went on to say that “the bankruptcy court must make the final determination of property interests after full presentation of the evidence.” Id. Before authorizing the trustee to sell the grain, the bankruptcy court was to “carefully consider the requirements of section 363(f) and the duty under the Code to protect the property interests of third parties.” Id. at 778. We directed that “[t]he bankruptcy court should particularly examine its authority to order the sale if title documents indicate that the estate possesses no substantial ownership rights to the grain and that any bona fide dispute over the property exists only between third parties.” Id.
Section 363(f) allows the bankruptcy court to authorize the sale
free and clear of any interest in such property of an entity other than the estate, only if—
(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
(2) such entity consents;
(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of such interest;
(4) such interest is in bona fide dispute; or
(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.
11 U.S.C. § 363(f). The district court agreed with the bankruptcy court’s findings that subsections (4) and (5) were satisfied and therefore authorization of the sale was justified. In re Cox Cotton Co., 24 B.R. 930, 937 (D.C.E.D.Ark.1982).
Cryts disagrees, however, and argues that the conditions were not met for the sale authorization. Cryts claims that neither subsections (4) or (5) were satisfied and that Cryts, as legal owner, thus had the right to remove the 31,000 bushels of soybeans because the trustee held the soybeans solely as a bailee.
Cryts’ argument fails for two reasons. First, he may not belately attack the bankruptcy order of sale in these collateral proceedings; once Cryts was apprised of the bankruptcy court’s sale order and failed to timely appeal, he was obligated to obey these orders even if they were in error. Second, we think it clear from the overall evidence that the district court’s extensive analysis and ultimate conclusion with respect to the bankruptcy court’s jurisdiction over the grain, see 24 B.R. at 933-39, was not in error. Thus, we conclude the bankruptcy court did not err in ordering the sale of the grain.[2]
II. Bankruptcy Court Contempt Power
The fundamental question before us is the constitutionality of Congress’s delega *623 tion in the 1978 Bankruptcy Reform Act of civil contempt powers to bankruptcy courts. The district court, in a thorough, analytical opinion found that exercise of the contempt power by the bankruptcy judge was unconstitutional. The core analysis of the district court’s opinion was that the judicial power of the United States can be vested only in Article III judges, that bankruptcy judges are not Article III judges, and that the delegation of contempt power to bankruptcy judges is therefore unconstitutional.
We do not pass on the merits of the district court’s analysis; we conclude that the district court erred in failing to give proper recognition to the prospective holding of Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In holding that the decision regarding the unconstitutionality of the Bankruptcy Reform Act of 1978 should not be applied retroactively, the Supreme Court stated: “It is ... plain that retroactive application would not further the operation of our holding, and would surely visit substantial injustice and hardship upon those litigants who relied upon the Act’s vesting of jurisdiction in the bankruptcy courts. We hold, therefore, that our decision today shall apply only prospectively.” 458 U.S. at 88, 102 S.Ct. at 2880.[3]
The question then arises whether the prospective application is limited to § 1471 jurisdiction, which the Northern Pipeline concurrence argues was the only issue before the Court, or includes the entire Bankruptcy Act and thus § 1481, which provides for the exercise of contempt powers by the bankruptcy judge.[4] The Second Circuit in Martin-Trigona v. Shiff, 702 F.2d 380, 384 n. 8 (2d Cir.1983), was faced with this question in a similar civil contempt proceeding. The Second Circuit reasoned that when the Supreme Court stated its decision would apply only prospectively, the Court intended for the decision not to “affect bankruptcy court decisions pending on appeal before June 28, 1982, the date of the Supreme Court opinion.” Id. (quoting Barnes v. Whelan, 689 F.2d 193, 196 n. 1 (D.C.Cir. 1982)). This included contempt proceedings.
We agree with the Second Circuit’s reasoning. The full import of the Supreme Court’s prospective decree is that prior to Northern Pipeline, the bankruptcy court was vested with plenary jurisdiction to act in accord with the congressional grant. The congressional grant included the power of contempt. See 28 U.S.C. § 1481; 18 U.S.C. § 401. Were this reasoning not followed, pre-Northem Pipeline bankruptcy decisions would be subject to continuing ad hoc attacks on the various congressional grants of bankruptcy power under the Reform Act. The plurality opinion recognized this when it stated:
In these circumstances we cannot conclude that if Congress were aware that the grant of jurisdiction could not constitutionally encompass this and similar claims, it would simply remove the jurisdiction of the bankruptcy court over these matters, leaving the jurisdictional provision and adjudicatory structure in *624 tact with respect to other types of claims, and thus subject to Art. Ill constitutional challenge on a claim-by-claim basis.
458 U.S. at 87 n. 40, 102 S.Ct. at 2880 n. 40 (emphasis added). We view this statement and the prospective application of Northern Pipeline as precluding challenges to gre-Northern Pipeline bankruptcy decisions “on a claim-by-claim basis.”
This view is not altered by the Northern Pipeline concurrence. The position of the concurrence was that the decision should be limited to the constitutionality of § 1471. However, the concurring opinion joined the majority with respect to the prospective application, and we read this as incorporating the views we derive from the plurality decision regarding the preclusion of ad hoc challenges to pre-Northem Pipeline bankruptcy decisions.
In addition, we take judicial note of the fact that the Judicial Conference and the Judicial Councils, in passing interim rules to give the bankruptcy courts jurisdiction via the district courts, did so assuming that other provisions under the Reform Act would not survive. These rules generally have been found constitutional. See, e.g., Oklahoma Health Services Federal Credit Union v. Webb, 726 F.2d 624, 625 (10th Cir.1984); In re Kaiser, 722 F.2d 1574, 1581 (2d Cir.1983); White Motor Corp. v. Citibank, N.A., 704 F.2d 254, 263 (6th Cir.1983). These interim rules presuppose that Northern Pipeline struck the entire Act, not just § 1471, and that the prospective application thus applies to the entire Act.[5]
We reach this conclusion cognizant of the fact that Congress is in the midst of restructuring the entire Bankruptcy Act. Whether the new Act may properly provide the bankruptcy courts with contempt power outside of Article III is of course not decided by either the district court in the decision below or the Supreme Court in Northern Pipeline.
Having concluded that Northern Pipeline mandates a finding of a constitutionally valid contempt power in bankruptcy courts, we must still decide if this power is limited by Bankruptcy Rule 920, 411 U.S. 989, 1100, 93 S.Ct. 3095, 3171, 37 L.Ed.2d xxxiii, lxxix (1973).[6] This rule, prescribed by the Supreme Court, gave contempt power to bankruptcy courts[7] but imposed a $250 limit on fines. Section 1481, on the other hand, states: “A bankruptcy court shall have the powers of a court of equity, law, and admiralty, but may not enjoin another court or punish a criminal contempt not committed in the presence of the judge of the court or warranting a punishment of imprisonment.” 28 U.S.C. § 1481.
The “powers of a court of equity, law, and admiralty” are defined in 18 U.S.C. § 401, which provides:
A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—
*625 (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
(2) Misbehavior of any of its officers in their official transactions;
(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.
At least two district courts have read rule 920 as continuing to limit the contempt powers of bankruptcy courts even after the enactment of section 1481. Horace v. Moore, 24 B.R. 892 (D.C.N.D.Ill.1982); Martin-Trigona v. Skiff 19 B.R. 1001, (D.C.Conn.1982). Several bankruptcy courts, on the other hand, have held that rule 920 is no longer applicable. See, e.g., In re Stacy, 21 B.R. 49, 52 (Bkrtcy.W.D.Va.1982); In re Gorin, 18 B.R. 151, 153 (Bkrtcy.D.Conn.1982); In re Lowe, 18 B.R. 20, 24 (Bkrtcy.N.D.Ga.1981); In re Eisenberg, 7 B.R. 683, 690-91 (Bkrtcy.E.D.N.Y.1980). But see In re Pal Transport, Inc., 13 B.R. 935, 940 (Bkrtcy.M.D.Fla.1981) (“Since the Code is silent on this subject, there is no question that Bankruptcy Rule 920 still applies and still carries forward the limitations placed on the bankruptcy judge’s power to punish for contempt.”).
We agree with the majority of bankruptcy courts that rule 920 is no longer a limit to contempt power in view of section 1481.[8] Rule 920 was prescribed pursuant to 28 U.S.C. § 2075. Both the rule and the-statute were enacted before 28 U.S.C. § 1481. If section 1481 is inconsistent with rule 920, section 1481 controls since it was enacted later in time. Moreover, section 405(d) of the Bankruptcy Reform Act also provides that section 1481 applies to the extent rule 920 is inconsistent.[9]
The power of contempt is not unlimited, however, even if the contempt exercised is within the statutory grant. It has a due process limitation “declared to be ‘the least possible power adequate to the end proposed.’ ” Marshall v. Gordon, 243 U.S. 521, 541, 37 S.Ct. 448, 453, 61 L.Ed. 881 (1917) (quoting Anderson v. Dunn, 19 U.S. (6 Wheat.) 93, 105, 5 L.Ed. 242 (1821)). The review by the district court therefore should have been limited to whether the contempt order was “the least possible power adequate to the end proposed,” and whether the findings by the bankruptcy court were clearly erroneous. The district court here made a de novo review. On the strength of the prospective application of Northern Pipeline, we find this to be error. We thus vacate the district court decision and remand for a proper review consistent with this opinion.
Each party shall pay its own costs.

. Cryts and others also were involved in the unlawful removal on February 16-18, 1981, of this same grain from Ristine, Missouri. This court ordered the grain impounded in Bernie after the Ristine removal. In addition, Cryts was involved in the unlawful blockade of the Ristine elevator on July 20, 1981. These incidents, however, are not part of the present contempt appeal.

. The trustee argues that Cryts is estopped from challenging the constitutionality of the bankruptcy court’s contempt power because Cryts consented to subject matter jurisdiction. Cryts had filed a claim with the bankruptcy court on behalf of his partnership farming operation asking for affirmative relief. This action, asserts the trustee, precludes the inconsistent position that the bankruptcy court is not constitutionally vested with contempt powers. This argument has little merit. It is fundamental that subject matter jurisdiction cannot be waived by the parties. U.S. ex rel. Burnette v. Driving Hawk, 587 F.2d 23 (8th Cir.1978). The challenge of the bankruptcy court’s contempt power is in essence a challenge to the court’s subject matter jurisdiction for contempt. We find Cryts is not estopped from challenging the constitutionality of this jurisdiction.

. In its discussion of prospectivity, the Supreme Court cited Buckley v. Valeo, 424 U.S. 1, 142, 96 S.Ct. 612, 693, 46 L.Ed.2d 659 (1976). See Northern Pipeline, 458 U.S. at 88 n. 41, 102 S.Ct. at 2880 n. 41. Buckley involved the constitutionality of the Federal Elections Committee. The Supreme Court concluded that the Committee could not perform many of its legislative and adjudicative functions because the appointment process for Commission members failed to comply with the Appointments Clause of the Constitution, Art. II, § 2, cl. 2. The Court nevertheless accorded the past acts of the Committee de facto validity. The Sixth Circuit has interpreted the Court's citation to Buckley and general discussion on prospective application as precluding challenges to a bankruptcy court’s pre-Northern Pipeline acts or final determinations. White Motor Corp. v. Citibank, N.A., 704 F.2d 254, 258 (6th Cir.1983). We agree. A decision holding a statute prospectively unconstitutional means that the statute is given de facto validity prior to the decision.

. Section 1481 does not expressly provide for contempt, but does give the bankruptcy court the powers of a court of law, equity, or admiralty. These powers are further defined in 18 U.S.C. § 401, which includes the power of contempt.

. Ironically these rules, adopted by the district court in Arkansas, provide the bankruptcy court with contempt power. See Interim Rule (d)(1), General Order No. 24 (E.D.Ark. Dec. 20, 1982, amended April 2, 1984).

. The rule was passed by the Supreme Court pursuant to 28 U.S.C. § 2075, which provides:
The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under Title 11.
Such rules shall not abridge, enlarge, or modify any substantive right.
Such rules shall not take effect until they have been reported to Congress by the Chief Justice at or after the beginning of a regular session thereof but not later than the first day of May and until the expiration of ninety days after they have been thus reported.
These rules have now been superseded by the new bankruptcy rules prescribed by the Supreme Court on April 25, 1983, effective August 1, 1983.

. The rules actually gave contempt powers to bankruptcy referees, who were officers of the district court. Prior to 1978, the "bankruptcy court” was the district court. It was not until the 1978 Bankruptcy Act that a bankruptcy court separate from the district court was created. The district court below provides an excellent historical overview. See 24 B.R. at 939-41.

. See also 1 Collier on Bankruptcy, f 301, at 3-109 (15th ed. 1979).

. Section 405(d) provides:
The rules prescribed under section 2075 of title 28 of the United States Code and in effect on September 30, 1979, shall apply to cases under title 11, to the extent not inconsistent with the amendments made by this Act, or with this Act, until such rules are repealed or superseded by rules prescribed and effective under such section, as amended by section 248 of this Act.
Pub.L. 95-598, § 405(d), 92 Stat 2549, 2685 (1978). One district court has found this language not specific enough to override rule 920. Martin-Trigona v. Skiff, 19 B.R. 1001, 1002 (D.C. Conn.1982). We disagree.