In re OMEGA EQUIPMENT CORP.,
t/a Omega, Debtor.

OMEGA EQUIPMENT CORP., Plaintiff,

v.

JOHN C. LOUIS CO., INC., et
al., Defendants.

Civ. A. Nos. 84–2241, 84–2398.

United States District Court,
District of Columbia.

July 19, 1985.

---

Francis P. Dicello, Washington, D.C., for plaintiff.

Arthur L. Rhoads, Jr., Baltimore, Md., Jacob A. Stein, Washington, D.C., James E. Young, Cleveland, Ohio, for defendants.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

■ These consolidated bankruptcy appeals present the question whether a United States bankruptcy court, established by Congress under Art. I of the Constitution, possesses the power of judicial contempt as among those inherent in its general powers

conferred by 11 U.S.C. § 105.[1] The Court concludes that, as is the case with U.S. magistrates and other non-Art. III adjudicative officers, bankruptcy judges at present cannot be, and have not been, endowed with contempt power, but rather, in matters of contempt are limited to the submission of proposed findings of fact and conclusions of law to the parent federal district court, with a final adjudication of contempt to emanate, if at all, from the district judge following *de novo* review.

## I.

Appellant Gradall Company ("Gradall") is an Ohio corporation which manufactures and sells construction excavation equipment through regional distributors, of whom appellant John C. Louis Company, Inc. ("Louis") services the Washington, D.C.-Baltimore, Maryland, metropolitan area. Appellee Omega Equipment Corporation ("Omega") is a Washington area lessor of construction equipment which, in October, 1983, filed a Chapter 11 petition in the U.S. Bankruptcy Court for the District of Columbia and is currently operating its business as a debtor-in-possession. Louis, a creditor of Omega, was named to an Unsecured Creditors' Committee (the "Committee") of 20 of Omega's largest creditors, and, while serving on the Committee, began negotiating for the sale of Gradall equipment to several Omega employees who had, in the meantime, formed a corporation known as Gradall Specialists, Inc. ("GSI") to compete with Omega. Learning of the impending defection, Omega applied to the bankruptcy court for preliminary relief.

The bankruptcy court found Louis in breach of its fiduciary duty to its fellow unsecured creditors and, on March 26, 1984, having earlier entered a temporary restraining order, preliminarily enjoined Louis, its agents, and all others "in active concert or participation" having notice thereof, from "financing, cosigning, or guaranteeing debt" of, and from leasing or selling equipment to, or "otherwise assisting" either GSI or Omega's former employees who had formed it "in any fashion" in connection with their efforts to form a business competitive with Omega.

Thereafter, on or about the first of May, 1984, Gradall apparently sold the equipment which had been the subject of Louis' sales negotiations to GSI directly, by-passing Louis altogether (although with its knowledge and acquiescense). In the two weeks following, Omega filed first an "application," and then a "supplemental complaint," praying that Louis, its president, GSI and its principals, and Gradall be adjudged in contempt for their concerted violation of the bankruptcy court's preliminary injunction, and that the transaction be ordered rescinded and damages awarded.

On June 18, 1984, having denied defendants' motions to dismiss,[2] the bankruptcy court took evidence from which it found, by its Order of June 22, 1984, that Gradall, Louis, and Louis' president Wilmer S. Davison, having actual notice of the injunction, deliberately sought to, and did, evade its effect by engaging in the direct sale of construction equipment to GSI, and adjudged them in civil contempt. Motions for leave to take interlocutory appeals ensued, and were allowed by the district court on December 4, 1984, following a remand to

**1.** This case arose and matured entirely within the interregnum between the decision of June 28, 1982, in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), in which a plurality of the Supreme Court prospectively held a portion of the bankruptcy courts' jurisdiction under the Bankruptcy Act of 1978 to have been an unconstitutional delegation of the judicial power of the United States to non-Art. III tribunals, and the 1984 Amendments to the Act purportedly restructuring that jurisdiction in accordance with *Marathon* which became law on July 10,

1984. During that period the bankruptcy courts entertained cases by "reference" from the district courts under the Model Emergency Bankruptcy Rule (the "Emergency Rule"), adopted by the U.S. District Court for the District of Columbia on December 22, 1982.

**2.** The bankruptcy court held that the "supplemental complaint" constituted a "core," rather than a "related," proceeding, and that it possessed contempt power to enforce, i.e., to punish violations of, its preliminary injunction.

the bankruptcy court to make a determination of appropriate relief.[3]

Appellants present three principal questions on appeal: whether the bankruptcy court erred in denying appellants' motions to dismiss for lack of subject matter jurisdiction; whether the bankruptcy court erred by issuing its own order adjudicating contempt in a "related" proceeding in which it was obliged to submit a proposed order for entry by this Court; and whether the bankruptcy court erred in its factual determination that appellants violated its injunction. Because the Court concludes that the bankruptcy court was not empowered to enter the contempt judgment, and that it must hear the matter *de novo*, it does not reach the latter issue.[4]

## II.

On the basis of a review of the history of the bankruptcy system and the extent to which bankruptcy jurisdiction has, over the years, been exercised to greater or lesser degree by district judges themselves, at least one federal district court has held, in the wake of the Supreme Court's decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), that any attempt to grant civil contempt power to post-1978 bankruptcy judges would be unconstitutional. *See In Re: Cox Cotton Co.*, 24 B.R. 930, 939 ff. (E.D.Ark.1982), *vacated sub nom. Lindsey v. Ipock*, 732 F.2d 619 (8th Cir.), *cert. denied sub nom. Cryts v. French*, —— U.S. ——, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984).[5] On the other hand, at least one U.S. bankruptcy court

has rejected *Cox Cotton's* analysis in holding that it possessed the contempt power to enforce the automatic stay provision of the Bankruptcy Act, 11 U.S.C. § 362, against a member of the court-appointed reorganization committee who continued to prosecute an individual claim against the debtor. *In re: Johns-Manville Corp.*, 26 B.R. 919, 923–24 (1983). The 1984 Amendments which the *Marathon* decision precipitated do not expressly purport to extend to or withhold the power of contempt from bankruptcy courts, however, and even if they did, the question remains open as to whether, assuming it has ever been intended that the bankruptcy courts, as they are constituted by the Bankruptcy Act of 1978, exercise the power, they can constitutionally be enabled to do so as long as they remain non-Art. III courts.

■ It seems apparent that it is not so much the nature of a particular power as it is the extent to which it has remained subject to the dominion of an Art. III court that has been the constitutional parameter of congressional bestowals of judge-like powers upon non-Art. III tribunals. As Justice Brennan, writing for the plurality in *Marathon*, 458 U.S. at 78–84, 102 S.Ct. at 2875–78, observed, Congress properly can confer, and in a host of contexts has conferred upon all manner of "legislative" courts and agencies, the power to ascertain facts which will determine matters of congressionally-created rights. *See also Crowell v. Benson*, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932). The Supreme Court has also sanctioned the use of "adjunct

---

**3.** On November 19, 1984, the bankruptcy court reaffirmed its earlier decisions in light of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, 98 Stat. 333 (July 10, 1984) (the "1984 Amendments"), which it found to confirm its belief in its jurisdiction to rule as it had, but declined to order equitable relief in the form of a recission of the Gradall-GSI transaction on the ground that Omega had an adequate remedy at law in the form of damages. It did not consider other possible punishments.

**4.** The Court also assumes, without deciding, the validity of the bankruptcy court's preliminary injunction in all of its particulars. *See Walker*

*v. City of Birmingham*, 388 U.S. 307, 317–21, 87 S.Ct. 1824, 1830–32, 18 L.Ed.2d 1210, *reh'g denied*, 389 U.S. 894, 88 S.Ct. 12, 19 L.Ed.2d 202 (1967); *United States v. United Mine Workers*, 330 U.S. 258, 289–95, 67 S.Ct. 677, 693–97, 91 L.Ed. 884 (1947).

**5.** Without impairing the rationale of the district court's decision the court of appeals vacated it as a result of the district court's failure to give only prospective effect to the *Marathon* decision as the Supreme Court intended, the underlying dispute having arisen prior to *Marathon*. *See Lindsey v. Ipock*, 732 F.2d at 623.

fact-finders" in the adjudication of issues of even constitutional proportions. *See, e.g., United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424, *reh'g denied,* 448 .U.S. 916, 101 S.Ct. 36, 65 L.Ed.2d 1179 (1980). The saving consideration in each instance has been the retention of " 'the essential attributes of the judicial power' " in an Art. III court, *Marathon, supra,* 458 U.S. at 77, 102 S.Ct. at 2874, *quoting Crowell v. Benson,* 285 U.S. at 51, 52 S.Ct. at 292, and, in particular, the power of enforcement. *See Thomas v. Union Carbide Agricultural Products Co.,* — U.S. ——, —— – ——, 105 S.Ct. 3325, 3337–40, 87 L.Ed.2d 409 (1985); *see also Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.,* 725 F.2d 537, 544–46 (9th Cir.) *(en banc), cert. denied,* — U.S. ——, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984).

The several circuits' decisions which have upheld consensual reference of civil cases to magistrates pursuant to 28 U.S.C. § 636(c), a provision of the Federal Magistrate Act of 1979, are immediately instructive for purposes of this case.[6] In each the court determined that the Magistrate Act had retained the "essential attributes" of the judicial power in Art. III tribunals and had thus escaped constitutional infirmity. Critical to the decision of at least three of these courts has been the reservation of the power of judicial contempt in the district court. As explained by the Seventh Circuit,

> [A clear line of demarcation between the power of an Art. III judge and that of a magistrate] may be found in the allocation of the contempt power, because, under no aspect of the Magistrate Act, can a magistrate punish for contempt. 28 U.S.C. § 636(e). According to section 636(e), if an individual commits an act constituting contempt of court, the magistrate must certify the facts of the inci-

dent to a district judge. The judge, after holding a hearing and evaluating the allegedly contemptuous conduct, may determine the nature and severity of appropriate punishment, if indicated. . . . [T]he power to punish for contempt of court is the means by which many court judgments . . . are enforced. . . . [I]t remains the primary means of enforcing many court judgments, particularly injunctions. The vesting of this power exclusively in the hands of Article III judicial officers would seem, for present purposes at least, to provide an adequate distinction between such judges and non-Article III officers.

*Geras v. LaFayette Display Fixtures, Inc.,* 742 F.2d 1037, 1044 (7th Cir.1984). *See also Pacemaker,* 725 F.2d at 545; *Collins v. Foreman,* 729 F.2d 108, 116–17 (2d Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984).

The conclusion of the bankruptcy court in *In Re: Johns-Manville Corp.,* 26 B.R. 919 (Bankr.S.D.N.Y.1983) that it was, consistent with the Constitution, empowered to punish for civil contempt is dubious. Its decision was based on 28 U.S.C. § 1481, which, at the time, provided that "[a] bankruptcy court shall have the powers of a court of equity, law and admiralty." 26 B.R. at 923. But not only did *Marathon* hold that a bankruptcy court does *not* have all the powers of a court of law or equity (at least insofar as state law claims are concerned), the expansive language of § 1481 was omitted when the 1984 Amendments were enacted, replaced by the more modest grant of authority to bankruptcy courts to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the amended Bankruptcy Act. 11 U.S.C. § 105.

---

6. *Fields v. WMATA,* 743 F.2d 890 (D.C.Cir.1984); *Lehman Bros. Kuhn Loeb, Inc. v. Clark Oil & Refining Corp.,* 739 F.2d 1313 (8th Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 906, 83 L.Ed.2d 921 (1984); *Puryear v. Ede's Ltd.,* 731 F.2d 1153 (5th Cir.1984); *Goldstein v. Kelleher,* 728 F.2d 32 (1st Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984); *Collins v. Foreman,* 729 F.2d 108 (2d Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984); *Pacemaker Diagnostic Clinic of America v. Instromedix, Inc.,* 725 F.2d 537 (9th Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984); *Wharton-Thomas v. U.S.,* 721 F.2d 922 (3d Cir. 1983); *Geras v. LaFayette Display Fixtures, Inc.,* 742 F.2d 1037 (7th Cir.1984).

Appellee urges here that the contempt power is "necessary or appropriate" to *any* court, but the cases it cites for the proposition, such as *Ex Parte Robinson,* 86 U.S. (19 Wall.) 505, 22 L.Ed. 205 (1873), which speaks of the civil contempt power as being "inherent in all courts [as] essential to the preservation of order in judicial proceedings, and to the enforcement of [their] judgments, orders, and writs," *Id.* at 510, beg the question.[7] Each has arisen in connection with an exercise of the power by a court which was indisputably of Art. III stature, and each has adverted to necessity as a justification for finding the existence of contempt power because there was nowhere else to go to vindicate the authority of the court exercising it. Neither condition obtains in the case of bankruptcy courts. They are concededly not Art. III courts, and they have immediate recourse to Art. III courts to enforce compliance with their orders.

The power of contempt no doubt enhances the authority of any decision-maker, and in that sense it may be "necessary or appropriate," but it is surely not an inevitable concommitant of the authority to make decisions, else every decision-maker would have it *ex officio.* It does not follow that because an official is empowered to make decisions, he must also be able to punish those who refuse to accede to them. On the other hand, the contempt power is, in essence, the power to punish—to take away liberty or property for wrongful conduct—which, in turn, is the distinguishing characteristic of an officer who exercises the sovereign's judicial power, and of no other.

In the practice of administrative law, other rights of congressional origin (as are those of bankruptcy) are daily "adjudicated" by officials whose authority derives from the legislative branch. Yet of the myriad administrative agencies regularly rendering decisions which may ultimately be in need of enforcement, none can be found to have been endowed by Congress with the power of contempt. Each may

issue orders and judgments within its purview, but enforcement proceedings, should a party choose to ignore the administrative determination, must be brought before an Art. III court. *See, e.g.,* 29 U.S.C. § 160(e) (National Labor Relations Board); 15 U.S.C. § 78y (Securities and Exchange Commission). *See also Thomas,* —— U.S. at ——, 105 S.Ct. at 3339–40.

### III.

The scope of review by an Art. III court of the proceedings of a bankruptcy court under both the Emergency Rule and the Bankruptcy Act as amended depends upon the character of the proceeding. Both the Emergency Rule and the Act provide that a bankruptcy court may enter its own orders respecting "core" bankruptcy proceedings; in "related" proceedings, the bankruptcy judge must—as must a magistrate under 28 U.S.C. § 636(e)—submit to the district court proposed findings of fact and conclusions of law. *See* 28 U.S.C. § 157(c)(1); Emergency Rule, *slip op.* at ¶ (d)(3)(A) (December 22, 1982). "Related" proceedings are subject to *de novo* review by an Article III court, while "core" proceedings are reviewed under a "clearly erroneous" standard. *Compare* 28 U.S.C. § 157(c)(1) *with* § 158.

Omega contends here that the bankruptcy court's contempt finding in this case must be regarded part of a "core" proceeding, and thus subject only to review under the "clearly erroneous" standard. It argues that, unlike the state law contract claim which was the undoing of the bankruptcy court which undertook to adjudicate it in *Marathon,* this contempt proceeding is integral to, and derives its existence entirely from the preliminary injunction which, in turn, originated in the bankruptcy court's efforts to preserve a *status quo* upon which to restructure Omega's relationship with its creditors.

The Bankruptcy Act makes clear, however, that "core" proceedings relate directly to the administration of the debtor's

---

7. *See, also, Ex Parte Terry,* 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405 (1888); *Boyd v. Glucklich,* 116

Fed. 131 (8th Cir.1902); *In re Debs,* 158 U.S. 564, 15 S.Ct. 900, 39 L.Ed. 1092 (1895).

estate. 28 U.S.C. § 157(b)(2)(A)–(O); *see also Marathon,* 458 U.S. at 71, 102 S.Ct. at 2871 ("core" of federal bankruptcy power defined as "the restructuring of debtor-creditor relations"). Trial of a contempt charge is not a restructuring of the debtor-creditor relation. It entails a wholly collateral factual inquiry into an alleged contemnor's knowledge, conduct and intent. Moreover, if the "clearly erroneous" standard were to apply, a bankruptcy court would be possessed of the power to enforce all of its own determinations immune from any meaningful review by an Art. III court. Reasoning from the concerns expressed the plurality opinion in *Marathon,* 458 U.S. at 86 & n. 39, 102 S.Ct. at 2879 & n. 39, and the rationale of the various circuit court decisions upholding the Magistrate Act, the constitutionality of both the Emergency Rule and the Bankruptcy Act as amended would thus be cast into considerable doubt in the circumstances. Mindful, therefore, of the cardinal principle of construction favoring interpretations of statutes—or rules of court—which avoid constitutional quandaries when possible, *see, e.g., Kent v. Dulles,* 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958); *Ashwander v. TVA,* 297 U.S. 288, 346–48, 56 S.Ct. 466, 482–83, 80 L.Ed. 688 (Brandeis, J., concurring); *Crowell,* 285 U.S. at 62, 52 S.Ct. at 296, this Court is unwilling to conclude that the draftsmen of either the Emergency Rule or the 1984 Amendments contemplated so perfunctory a review of contempt proceedings in an Art. III court.

■ The Court holds that a contempt proceeding in bankruptcy cases must be deemed a "related" proceeding for purposes of the Emergency Rule and the Bankruptcy Act as amended. It will treat the bankruptcy court's findings of contempt here as proposed findings, but, in light of the multiple factual disputes attending them, will enter a final order or judgment only after hearing and a *de novo* review of the evidence.[8]

For the foregoing reasons, therefore, it is, this 19th day of July, 1985,

ORDERED, that the bankruptcy court's order of June 22, 1984, finding John C. Louis Co., Inc., Wilmer Davison and Gradall Company in contempt is vacated; and it is

FURTHER ORDERED, that the case is scheduled for a status conference on July 25, 1985, at 9:30 a.m. to assign a date for an evidentiary hearing on Omega's supplemental complaint; and it is

FURTHER ORDERED, that following the status conference aforesaid, Bankruptcy No. 83–394 will be severed from Civil Action Nos. 84–2241 and 84–2398 and remanded once more to the bankruptcy court to proceed with the administration of the debtor's estate.

---

**8.** Section 157(c)(1) of Title 28 provides that, in a related proceeding,

> the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judg-

ment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected.