In re INDUSTRIAL TOOL DISTRIBU-
TORS, INC., Debtor.

TELE–WIRE SUPPLY
CORP., Appellant,

v.

PRESIDENTIAL FINANCIAL CORPO-
RATION, INC., the United States of
America and Honorable Hugh Robin-
son, United States Bankruptcy Judge,
Appellees.

Civ. A. No. C85–1999A.
Bankruptcy No. 84–03121A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 3, 1985.

Ronald E. Barab, Smith, Gambrell &
Russell, Atlanta, Ga., for Tele-Wire Supply
Corp.

Scroggins, Brizendine & Bassler, Atlan-
ta, Ga., for debtor.

Peter J. Anderson, Peterson, Young, Self
& Asselin, Atlanta, Ga., for Presidential
Financial Corp., Inc.

Robert S. Wayne, Schwall & Heuett,
Atlanta, Ga., for National Bank of Ga.

Larry D. Thompson, U.S. Atty., Atlanta,
Ga., for U.S.

ORDER

ROBERT H. HALL, District Judge.

Presently pending before the court is the
appeal of Tele-Wire Supply Corporation
("Tele-Wire") from the February 6, 1985
Order of the United States Bankruptcy
Court for the Northern District of Georgia
(Robinson, J.) which found Tele-Wire in
contempt of court and imposed contempt
sanctions.

FACTS

The underlying bankruptcy action was
commenced on July 30, 1984, when appel-
lant Tele-Wire filed a motion for relief from
an automatic stay under 11 U.S.C. § 362.
(R. 1–30).

For reasons irrelevant to the instant ap-
peal, on November 16, 1984, the Bankrupt-
cy Court ordered Tele-Wire to pay into an
escrow account within ten days the sum of

$59,000.00, the funds to be held in the escrow account until the Court determined certain issues involved in the bankruptcy action. (R. 69–72).

On November 26, 1984, the tenth day following the "payment order," Tele-Wire moved the Bankruptcy Court to alter or amend the payment order to require Tele-Wire to pay no more than $25,000.00 into the escrow account. (R. 73–75). Tele-Wire did not pay the sum of $59,000.00 into an escrow account but did deposit approximately $29,000.00 into such an account.

On December 12, 1984, a party claiming a secured interest in the rest of the funds held by Tele-Wire (appellee Presidential Financial Corporation) filed a motion for a contempt order and for sanctions against Tele-Wire for failure to comply with the November 16 payment order. (R. 84–85).

On January 28, 1985, after adequate notice to all parties concerned, the Bankruptcy Court held a hearing on the motion for contempt sanctions. At the hearing, Tele-Wire, through counsel, conceded that the payment order was not complied with (T. 3), but argued that its filing of a motion to amend the payment order prior to the expiration of the ten-day payment period should excuse its noncompliance. (T. 4).

Without addressing Tele-Wire's argument for excusing its noncompliance, the Bankruptcy Court found Tele-Wire in contempt of court for failing to deposit the $59,000.00 into the escrow account as directed (T. 19) and ordered Tele-Wire to pay a fine of $100.00 per day beginning the first day of noncompliance (November 27, 1985) and continuing through the date of the hearing, as well as the attorneys' fees incurred by the party bringing the motion for contempt sanctions. (T. 19–21). The bankruptcy judge, calling the hearing one for civil contempt, reasoned that the sanction was necessary to enforce his payment order. (T. 9).

No evidence was presented at the hearing of any injuries resulting from Tele-Wire's noncompliance other than evidence relating to attorneys' fees, and the court did not order Tele-Wire to compensate any party for such an injury.

The Bankruptcy Court's oral ruling was reduced to a written order on February 5, 1985, and the order was filed February 6, 1985. (R. 97–98). That order stated, in pertinent part:

> This Court having considered the Motion [for Contempt Order and For Sanctions] and the briefs in support thereof and having heard argument of counsel and testimony, finds Tele-Wire in contempt of this Court's Order dated November 15, 1984 and entered November 16, 1984 by virtue of its failure to deposit into an interest-bearing escrow account the entire sum of $59,000.00 which was the subject matter of said Court's Order. As a result of Tele-Wire's failure to so comply with the Order of this Court, this Court imposes of [sic] a fine of $100.00 per day beginning November 27, 1985 [the first day of noncompliance] and continuing up to and through January 28, 1985 [the date of the contempt hearing]. In addition, this Court orders the sum of $315.00 to [be paid to the party moving for contempt sanctions] to cover its attorneys' fees incurred in having to bring the Motion for Contempt and Sanctions before this Court.

(R. 98).[1]

The Bankruptcy Court stayed the enforcement of the contempt sanctions pending Tele-Wire's appeal of the contempt order. (*Id.*). Tele-Wire filed its Notice of Appeal on February 6, 1985.

## DISCUSSION

Tele-Wire initially appealed from the February 6 contempt order on three grounds: (1) the Bankruptcy Court erred in enforcing an order for the payment of money with contempt sanctions; (2) the Bankruptcy court erred in imposing an excessive fine in a civil contempt proceeding; and (3) the Bankruptcy Court erred in imposing a

---

1. The $100.00-per-day-fine amounted to $6,200.00.

punitive fine in a civil contempt proceeding.[2] (Appellant's brief, pp. 3, 7, 8–16).

After the court questioned whether a bankruptcy judge even has the power to punish contempts in light of recent developments in bankruptcy law (*see* Order of July 1, 1985, pp. 5–6), Tele-Wire asserted lack of authority as another ground for reversal of the February 6 contempt order.[3]

INTRODUCTION

Disposition of this appeal is initially made difficult by uncertainty as to the nature of the contempt involved as it is the nature of the contempt—that is, whether the contempt was civil or criminal—which determines the legal issues before the court. Because the sanction is just as easily labelled civil as criminal, the court will enter alternative conclusions addressing both possibilities.

## I. *Criminal contempt*

### A. *The February 6 contempt order*

■ To the extent the February 6 contempt order was criminal in nature because of the apparent intent of the bankruptcy judge to punish Tele-Wire for failure to comply with the payment order and to vindicate his authority, *see Frankford Trust Co. v. Allanoff,* 29 B.R. 407, 411 (E.D.Pa. 1983); *In re Crabtree,* 39 B.R. 702, 709 (Bankr.E.D.Tenn.1984), the court, upon careful consideration of the amendments made to the Bankruptcy Code in the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353 (1984), concludes that the Bankruptcy Court lacked the statutory authority to punish for criminal contempt and thus that the February 5 contempt order must be vacated for lack of authority.

**2.** Notably, Tele-Wire did *not* seek a reversal of the contempt order on the ground that its noncompliance with the payment order was not contemptuous.

**3.** Appellee would have this court disregard appellant's "supplemental" ground for reversal since appellant did not contest the bankruptcy judge's authority to punish contempts in its first brief. (Appellee's supplemental brief, filed July 30, 1985, p. 7). The court declines to do so, finding the fundamental question of whether

Under the former Bankruptcy Act and Bankruptcy Rules (Rule 920), a bankruptcy referee had limited remedial and punitive contempt powers. Subsequently, under the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598 (1978), the contempt powers of bankruptcy judges were extended even though the judge was still prohibited from punishing a criminal contempt (a) not committed in the presence of the judge or (b) warranting a punishment of imprisonment. *See* 11 U.S.C. § 105(a) (pre-1984 version)[4] and 28 U.S.C. § 1481. *See generally* 1 Collier on Bankruptcy ¶ 3.01[8] (15th Ed. 1985).

Congress then amended the Bankruptcy Code in the Bankruptcy Amendments and Federal Judgeship Act of 1984, *supra.* One amendment to the Code was the amending of § 105(a) to read:

(a) The [district] court [rather than the bankruptcy court] may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code].

11 U.S.C. § 105(a) (1984). The 1984 amendments also added the following subsection to § 105, apparently in part to address the powers of bankruptcy judges in the absence of the former § 105(a):

(c) The ability of any district judge or other officer or employee of a district court to exercise any of the authority or responsibilities conferred upon the court under this title shall be determined by reference to the provisions relating to such judge, officer, or employee set forth in title 28. *This subsection shall not be interpreted to exclude bankruptcy judges ... from its operation.*

the bankruptcy court had the power to enter the contempt order appealed from a question which this court must address even if it has to do so *sua sponte.* (The court notes that appellee has had the opportunity to introduce authority in opposition to appellant's new ground for appeal.)

**4.** The former § 105(a) provided: "The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."

11 U.S.C. § 105(c) (1984) (Emphasis added).[5]

Because nothing in the 1984 legislation explicitly deals with the contempt power of bankruptcy judges, a bankruptcy judge's statutory power to punish contempts is found, if at all, in the terms of § 105(c), which effectively provides that whether a bankruptcy judge has the broad power to issue "any order ... that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]" is determined by the provisions of Title 28 relating to bankruptcy court jurisdiction.

Initially the court notes that 28 U.S.C. § 151, providing that the bankruptcy court is a "unit" of the district court, makes it clear that a bankruptcy court is not a "court of the United States" for purposes of 18 U.S.C. § 401 which sets forth the contempt powers of "courts of the United States." *See also* 28 U.S.C. § 451 (definition of "courts of the United States" does not include bankruptcy courts).

Turning to other relevant provisions of Title 28, § 157(a) states that "[e]ach district court may provide that any or all cases under title 11 [the Bankruptcy Code] and any or all proceedings arising under title 11 or arising in or related to a case under Title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a) (1984). Section 157(b)(1) then provides that:

> Bankruptcy judges may hear and determine all cases under title 11 and all *core proceedings* arising under title 11, or *arising in a case under title 11,* referred under subsection (a) of this section, and *may enter appropriate orders* and judgments, subject to review....

28 U.S.C. § 157(b)(1) (1984) (Emphasis added).

The power of the bankruptcy court to enter "appropriate" orders pursuant to 28 U.S.C. § 157(b)(1) is, of course, restricted by 11 U.S.C. § 105 to orders appropriate to carrying out the provisions of the Bankruptcy Code. *Accord Better Homes of Virginia v. Budget Service Co.,* 52 B.R. 426, 430 (E.D.Va.1985).[6]

■ Because a civil contempt order—that is, either a remedial or coercive contempt order—resulting from a party's failure to comply with an order of the bankruptcy court in a "core proceeding" arising in a bankruptcy action can be said to be an "appropriate order" to effectuate the Bankruptcy Code, the court concludes that the power to issue such a contempt order is conferred on bankruptcy judges by orders entered by the district court pursuant to

---

**5.** Even without the last sentence of § 105(c), that section would cover bankruptcy judges as they are defined as "judicial officers" of the district court in 28 U.S.C. §§ 151 and 152(a)(1).

**6.** Section 1481 of Title 28, if it was not rendered a nullity by the 1984 Act, would be another relevant provision. At the time of the 1984 legislation, that section provided:

> A bankruptcy court shall have the powers of a court of equity, law, and admiralty, but may not ... punish a criminal contempt not committed in the presence of the judge of the court or warranting a punishment of imprisonment.

28 U.S.C. § 1481. Thus, this court must determine whether § 1481 was or was not repealed by the 1984 Act.

Two conflicting provisions of the 1984 Act create confusion as to the status of 28 U.S.C. § 1481 after the 1984 Act. Section 113 of the Act provided that § 1481 "shall not be effective," while § 121(a) of the Act provided that § 1481 shall be effective on July 10, 1984. At least one court has decided that § 1481 is unaffected by either provision since they are conflicting, *see Better Homes of Virginia v. Budget Service Co.,* 52 B.R. 426, 430 (E.D.Va.1985), but other authorities have assumed that § 1481 was effectively repealed. *See Omega Equip. Corp. v. John C. Louis Co., Inc.,* 51 B.R. 569, 572 (D.D.C.1985); *Robinson v. Johns-Manville Corp.,* 52 B.R. 940, 941 n. 2 (S.D.N.Y.1985). *See generally* 1A Collier on Bankruptcy, ¶ 3.01[8a] (15th ed.1985) ("Section 1481 was effectively repealed by the Bankruptcy Amendments and Federal Judgeship Act of 1984."). This court agrees with the latter authorities. Given Congressional intent to restrict the powers of bankruptcy judges pursuant to *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), it is highly likely that Congress meant to make § 1481 prospectively ineffective, which is what § 113 of the 1984 Act does. Further, since § 1481 was already in effect and there was no reason to give it an effective date of July 10, 1984, § 121(a) was obviously an oversight.

§ 157(a), unless specifically excepted from the district court's orders. In this district, the order referring bankruptcy cases to the bankruptcy judges of the district does not except the contempt power from the bankruptcy judges' power [7] and thus the bankruptcy judges in this district have the statutory authority to issue civil contempt sanctions. *Accord Better Homes of Virginia v. Budget Service Co., supra*, 52 B.R. at 428–30.

As for a bankruptcy judge's power to enter a criminal contempt sanction, however, the court finds that such a sanction is necessary only to vindicate the dignity of the bankruptcy court and thus not an order (much less an appropriate order) to effectuate the Bankruptcy Code. *Accord id.* Accordingly, the court concludes that a bankruptcy judge lacks statutory authority to enter a criminal contempt order. *Accord id. Compare Omega Equipment Corp. v. John C. Louis Co., Inc.*, 51 B.R. 569, 573–74 (D.D.C.1985) (construed the 1984 Act such that bankruptcy courts were not vested with any contempt powers).

Thus, to the extent the contempt order on appeal is a criminal contempt order, the court VACATES it for lack of authority.[8]

### B. *De novo review*

The conclusion that the Bankruptcy Court's criminal contempt order must be vacated does not end the matter, however. Under Bankruptcy Rule 9020(a)(3), a bankruptcy judge may certify the facts to the district court if it appears to him or her that criminal contempt has occurred but that he or she is without power under 28 U.S.C. § 1481 to impose the appropriate punishment. Even though § 1481 was ef-

fectively repealed by the 1984 Act (*see* footnote 6 *supra*), the court finds this procedure appropriate for the instant case [9] and will proceed as if the Bankruptcy Court below certified the facts to this court for entry of a criminal contempt sanction given that court's obvious opinion that a criminal contempt sanction against Tele-Wire is warranted. Accordingly, the court hereby DIRECTS Tele-Wire to appear on December 30, 1985, at 9:30 A.M. in Courtroom 2108 to show cause why it should not be held in criminal contempt for failing to comply with the Bankruptcy Court's Order of November 16, 1984, to pay $59,000.00 into an escrow account within ten days.

### II. *Civil contempt*

To the extent that the February 6 contempt order was civil in nature because of the nature of the proceedings (initiated by Presidential Financial Corporation rather than the Bankruptcy Court; handled as a part of the ongoing bankruptcy proceeding rather than as a separate action; labelled a "civil contempt proceeding" by the bankruptcy judge), because of the intent of the bankruptcy judge to "enforce" his payment order, *see Frankford Trust Co. v. Allanoff, supra*, 29 B.R. at 411, and because of the nature of the contemptuous conduct (refusal to do an act commanded), *see In re Crabtree, supra*, 39 B.R. at 709; *In re Newlin*, 29 B.R. 781, 783 (E.D.Pa.1983), the court concludes that the contempt sanction must be vacated for two alternative reasons: first, the Bankruptcy Court did not comply with the legal standards governing civil contempt sanctions; and, second, even if the Bankruptcy Court had applied the proper legal standards, the statutory grant

---

7. That order, entered July 12, 1984, states:
 All cases under Title 11 U.S.C. and all proceedings arising under Title 11 U.S.C. or arising in or related to a case under Title 11 U.S.C. are hereby and shall hereinafter be referred to the bankruptcy judges of this district pursuant to 28 U.S.C. § 157 as contained in Public Law 98–353; 98 Stat. 333, nunc pro tunc as of July 11, 1984, pursuant to a direction of the judges of this Court at a meeting this day at which a quorum was present. . . .

8. The court does not believe that the Bankruptcy Court has inherent criminal contempt powers. *See Cryts v. Lindsey*, 24 B.R. 930, 945–56 (E.D.Ark.1982), *vacated on other grounds sub nom. Lindsey v. Ipock*, 732 F.2d 619 (8th Cir.), *cert. denied sub nom. Cryts v. French*, —— U.S. ——, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984).

9. *Compare* 28 U.S.C. § 636(e) (1984) (certification of facts warranting contempt by magistrates).

of contempt power to bankruptcy judges is unconstitutional.

### A. Compliance with legal standards

 Sanctions for civil contempt can be imposed for one or both of two distinct purposes: (1) to compel or coerce obedience of a court order; and (2) to compensate the complainant for losses resulting from the contemnor's noncompliance. *See United States v. United Mine Workers of America*, 330 U.S. 258, 303–04, 67 S.Ct. 677, 701–02, 91 L.Ed. 884 (1947); *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1147 (9th Cir.1983).

The Bankruptcy Court below could not have intended the sanction to be compensatory or remedial since there was no evidence of any losses sustained as a result of Tele-Wire's noncompliance with the payment order and, further, the $100-per-day fine was to be paid to the court and not to the complainant, Presidential Financial Corporation.

By reasoning that the sanction would help "enforce" the payment order, the Bankruptcy Court apparently thought that punishment of past disobedience would compel Tele-Wire to comply with the order in the future. However, considering the "probable effectiveness of [the] sanction in bringing about the result desired," *United Mine Workers, supra*, 330 U.S. at 304, 67 S.Ct. at 701, this court finds that a punitive sanction is not an effective method of coercing future behavior and thus not an appropriate civil contempt sanction; a conditional sanction would be the appropriate way to compel compliance with an order. *See, e.g., In re Crabtree, supra*, 39 B.R. at 712 (civil contempt sanctions conditioned on debtor's compliance with turnover order).

Accordingly, because the Bankruptcy Court's sanction did not comply with established legal standards, the court VACATES the sanction.

### B. Constitutionality of statutory contempt power

 Given the inherent arbitrariness of any determination that a civil contempt sanction does not comply with the controlling legal standards, the court goes forward with a consideration of the controversial issue of whether the statutory grant of contempt powers to bankruptcy judges (*see* discussion *supra*) is an unconstitutional delegation of Article III powers to a non-Article III court.

This issue was first raised and decided by the United States District Court for the Eastern District of Arkansas in *Cryts v. Lindsey*, 24 B.R. 930, 939–56 (E.D.Ark. 1982), *vacated on other grounds, sub nom. Lindsey v. Ipock*, 732 F.2d 619 (8th Cir.), *cert. denied sub nom. Cryts v. French*, — U.S. —, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984). That court held, in a thorough analytical opinion, that the power of contempt is essentially judicial and may not be constitutionally exercised by a bankruptcy court, a non-Article III court. *Id.* at 939–56. The Eighth Circuit reversed this decision because the district court failed to give only prospective effect to *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and did not pass on the merits of the district court's analysis. *Lindsey v. Ipock*, 732 F.2d at 622–24.

Agreeing with the reasoning and conclusion of the district court in *Cryts*, and finding *Northern Pipeline Construction Co.* applicable to this action, this court concludes that the delegation of contempt powers to bankruptcy judges in the 1984 Act was unconstitutional and that the contempt order on appeal must accordingly be vacated.[10] *Cf. Omega Equipment Corp. v. John C. Louis Co., Inc., supra*, 51 B.R. at 571–74 (D.D.C.1985) (construed the 1984 Act such that bankruptcy courts were not vested with contempt powers because it would have been unconstitutional to delegate such powers to them); *R & M Porter*

---

**10.** Again, the court does not believe that the Bankruptcy Court has inherent contempt pow-

ers. *See* footnote 8 *supra*.

*Farms, Inc. v. Green Hills Production Credit Association,* 38 B.R. 88, 91–92 (Bankr.W.D.Mo.1984) (finding *Cryts* supported by *Northern Pipeline Construction Co.*). *Contra Better Homes of Virginia v. Budget Service Co., supra,* 52 B.R. at 430–31; *In re Silver,* 46 B.R. 772, 774 n. 2 (D.Colo.1985); *In re Johns-Manville Corp.,* 26 B.R. 919, 924 (Bankr.S.D.N.Y.1983).

If the Bankruptcy Court feels that a civil contempt sanction is necessary, it should certify the facts to this court for an appropriate order.

CONCLUSION

In sum, the court VACATES the contempt order entered by the Bankruptcy Court on February 6, 1985, on the alternative grounds discussed above. This action is REMANDED to the Bankruptcy Court to proceed with the bankruptcy action.

The court retains jurisdiction over only the issue of whether this court should hold Tele-Wire in criminal contempt for not complying with the payment order of the Bankruptcy Court.