Marilyn HAILE, Plaintiff,

v.

NEW YORK STATE HIGHER EDUCATION SERVICES CORP., Credit Bureau, Inc., and Alan P. Joseph, Defendants.

No. CIV–88–276T.

United States District Court,
W.D. New York.

Aug. 24, 1988.

Harris, Maloney, Horwitz, Evans & Fox (Robert S. Cooper, of counsel), Rochester, N.Y., for plaintiff.

Frederick J. Schreyer, Albany, N.Y., for New York State Higher Educ. Services Corp.

Hiscock & Barclay, Albany, N.Y., for Credit Bureau, Inc.

Paul V. Oliver, Albany, N.Y., for Alan P. Joseph.

TELESCA, District Judge.

## INTRODUCTION

The New York State Higher Education Services Corporation ("NYSHESC"), Credit Bureau, Inc., ("CBI") and Alan P. Joseph ("Joseph"), are creditors who seek review of an order signed by the Honorable Edward D. Hayes, United States Bankruptcy Judge for the Western District of New York, which found them in contempt of court for willfully violating the automatic stay provided to debtors in bankruptcy pursuant to 11 U.S.C. § 362(a). On appeal the defendants challenge the bankruptcy court's jurisdiction to hold a party in contempt and impose sanctions. Furthermore, the creditors raise several issues particular to each. For the reasons that follow I conclude that the bankruptcy court is authorized to make contempt determinations and I affirm the order appealed from.

## FACTS

In his order dated January 28, 1988, Judge Hayes found that the debtor, Marilyn Haile, filed a Chapter 13 bankruptcy petition on February 25, 1987. Approximately two and one-half weeks later, on March 13, 1987, Mr. Fox from CBI (a collection agency employed by the NYSHESC), telephoned Ms. Haile at work and left a message. Later that day she returned the telephone call and informed Mr. Fox that she had filed a Chapter 13 bankruptcy petition. He told Ms. Haile that filing a bankruptcy petition did not discharge her obligation to repay a debt incurred from a student loan and tried to convince her to commence a payment plan on that debt.

On March 16, 1987, Ms. Haile informed her attorney, Robert S. Cooper, Esq., that CBI was attempting to collect on the student loan debt. Prompted by that call, Mr. Cooper then telephoned Mr. Fox at CBI to inform him that Ms. Haile had filed a bankruptcy petition in accordance with Chapter 13. That same day CBI contacted the Alan Joseph law office to inform that office that Ms. Haile had filed bankruptcy. That law office, which is also employed by the NYSHESC to proceed with collection efforts, requested CBI's collection file.

The Joseph office prepared a summons and complaint on March 25, 1987, and delivered them to its process server on March 30, 1987. The following day, on March 31, 1987, the Joseph law office unsuccessfully attempted to reach Ms. Haile at work by telephone. Judge Hayes specifically notes that this attempt to directly contact Ms. Haile was made after the Joseph office had been informed by CBI not only that Ms. Haile was represented by counsel but that she had filed a bankruptcy petition.

On April 1, 1987, the Joseph office contacted Ms. Haile and told her that if she did not make payment on the student loan debt she would be served with the summons and complaint. Ms. Haile contacted her attorney who then telephoned the Joseph office to inform them of Ms. Haile's bankruptcy petition. The representative from the Joseph office with whom Mr. Cooper spoke acknowledged that that office knew of the bankruptcy filing. Mr. Cooper then sent a letter confirming that conversation to the Joseph office enclosing a time-stamped copy of the Chapter 13 bankruptcy petition.

Twelve days later, on April 13, 1987, Ms. Haile received notification from the Internal Revenue Service ("IRS") that her federal tax refund for 1986 had been set off that day and that if she had any questions she could contact the NYSHESC. As of that date, the student loan debt account, which had been assigned to the United States Department of Education, was reassigned to the NYSHESC. On April 16, 1987, Mr. Cooper telephoned the NYSHESC and demanded that Ms. Haile's tax refund be returned to her by reason of her bankruptcy filing. He was informed that at that time nothing could be done because the NYSHESC had not actually received the moneys from the Department of Education.

Mr. Cooper received a letter from the Joseph law office dated May 7, 1987, stating that that office had advised the NYSHESC to retain Ms. Haile's tax refund in spite of Cooper's request to return it to his client. The NYSHESC acknowledges receiving notice of the bankruptcy petition from the Joseph law office in May, 1987 and, nevertheless, determined that it would retain Ms. Haile's 1986 tax refund which it had applied to her pre-petition student loan debt. The NYSHESC, several months later, reassigned Ms. Haile's account to the United States Department of Education for continued collection. On September 28, 1987, Ms. Haile was notified by the NYSHESC that if she did not pay her student loan debt, and if the IRS had the right to retain her 1987 tax refund, that refund would be offset during 1988.

Based on these events, Ms. Haile's attorney filed a motion before Judge Hayes seeking an order finding the NYSHESC and its agents, CBI and Alan Joseph, in contempt of court for willful violation of the automatic stay provision of 11 U.S.C. § 362(a). As relief, plaintiff sought return of her tax refund that had been withheld, compensatory and punitive damages, costs and attorney fees. Judge Hayes heard oral argument on the motion on January 11, 1988. During that proceeding, Judge Hayes ruled from the Bench, finding creditors in contempt for willfully violating the automatic stay and directed Ms. Haile's attorney to submit an order, including findings of fact and conclusions of law, reflecting that ruling. On January 28, 1988, Judge Hayes signed that order compelling the NYSHESC to return Ms. Haile's 1986 tax refund in the amount of $3,082.75, requiring the creditors to pay Ms. Haile compensatory damages of $1,300.00 plus attorney's fees and costs of $3,001.50, as well as $5,000.00 punitive damages for their willful violation of the automatic stay. Judge Hayes further ordered that the creditors would be required to pay $1,000.00 punitive damages plus attorney's fees for each violation of the automatic stay occurring after the January 11, 1988 hearing. It is that order from which this appeal arises.

### DISCUSSION

#### A.

■ The initial issue raised by all appellants is whether the bankruptcy court is empowered to make a finding of contempt. This issue has been passed on by numerous courts in the wake of the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), in which the Court held that the Bankruptcy Act of 1978 impermissibly granted powers to Article I bankruptcy courts which were traditionally reserved for Article III courts. Some courts have found statutory or constitutional justification for finding that a bankruptcy judge

**54**

may make contempt determinations.[1] However, other courts have ruled that the bankruptcy court has no such power.[2] Yet other courts, in recognition of the unsettled nature of this issue, have declined to decide the question and have chosen to certify the contempt determination to the district court.[3]

The only Court of Appeals to examine the question held that there is no express or implied statutory authority that grants such power to bankruptcy judges and that, therefore, bankruptcy judges have no jurisdiction to issue civil contempt orders. *In re: Sequoia Auto Brokers, Ltd.,* 827 F.2d 1281 (9th Cir.1987). However, that decision has come under criticism. In *In re: Miller,* 81 B.R. 669 (Bankr.M.D.Fla.1988), Chief Judge Paskay undertook an exhaustive analysis of the contempt power of the bankruptcy court. Contrary to the Ninth Circuit's opinion in *Sequoia,* Chief Judge Paskay found that contempt power does rest in the bankruptcy court. He reasoned that such authority can be traced to 11 U.S.C. § 105(a) which allows the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title ..." He further determined that contempt proceedings are "core" proceedings as to which the bankruptcy court may make a final determination and need not certify the matter for disposition by the District Court.[4] A similar conclusion was arrived at in *In re: Hamilton Allied Corp.,* 87 B.R. 43 (Bankr.S.D.Ohio 1988).

In this district Bankruptcy Judge Edward Hayes found the Internal Revenue Service in contempt for willfully violating the automatic stay provisions of the Bankruptcy Code insofar as the I.R.S. had sent the debtor a collection subpoena subsequent to that debtor's Chapter 11 bankruptcy filing. *In re: Pyramid Restaurant Equipment Co., Inc.,* 24 B.R. 455 (Bankr. W.D.N.Y.1982). The I.R.S. appealed that order to this Court and on March 21, 1983, I affirmed Judge Hayes' order, based on my determination that the decision of the bankruptcy judge was not clearly erroneous. Implicit in my decision was a determination that the Bankruptcy Court has the authority to make a contempt finding and impose appropriate sanctions. The appellants' arguments presented here fail to persuade me to retreat from that position. While I note the Ninth Circuit's opposite holding, I am convinced that a contempt proceeding is a "core" proceeding under 28 U.S.C. § 157, the determination of which properly rests within the purview of the bankruptcy judge. Accordingly, review in the present case is governed by the "clearly erroneous" standard for review of factu-

---

**1.** *See Kellogg v. Chester,* 71 B.R. 36 (N.D.Tex. 1987); *In re: Hamilton Allied Corp.,* 87 B.R. 43 (Bankr.S.D.Ohio 1988); *In re: Miller,* 81 B.R. 669 (Bankr.M.D.Fla.1988); *In re: Haddad,* 68 B.R. 944 (Bankr.D.Mass.1987); *In re: Edgehill Nursing Home, Inc.,* 68 B.R. 413 (Bankr.E.D.Pa. 1986); *In re: Elegant Concepts, Ltd.,* 67 B.R. 914 (Bankr.E.D.N.Y.1986); *In re: Stewart,* 65 B.R. 195 (Bankr.W.D.N.Y.1986); *In re: Shafer,* 63 B.R. 194 (Bankr.D.Kan.1986); *In re: L.H. & A. Realty, Inc.,* 62 B.R. 910 (Bankr.D.Vt.1986); *In re: Johns–Manville Corp.,* 57 B.R. 680 (Bankr.S. D.N.Y.1986); *In re: Gaslight Club, Inc.,* 54 B.R. 252 (Bankr.N.D.Ill.1985); *In re: Depew,* 51 B.R. 1010 (Bankr.E.D.Tenn.1985); *In re: Damon,* 40 B.R. 367 (Bankr.S.D.N.Y.1984); *In re: Pierson,* 33 B.R. 743 (Bankr.W.D.N.Y.1983); *In re: Johns–Manville Corp.,* 26 B.R. 919 (Bankr.S.D.N. Y.1983); *In re: Eisenberg,* 7 B.R. 683 (Bankr.E. D.N.Y.1980).

**2.** *In re: Sequoia Auto Brokers, Ltd.,* 827 F.2d 1281 (9th Cir.1987); *In re: Continental Air Lines, Inc.,* 61 B.R. 758 (S.D.Tex.1986); *In re: Industrial Tool Distributors, Inc.,* 55 B.R. 746 (N.D.Ga.1985); *In re: Omega Equipment Corp.,* 51 B.R. 569 (D.D.C.1985); *In re: Moody,* 64 B.R. 594 (Bankr.S.D.Tex.1986); *In re: Cox Co.,* 24 B.R. 930 (Bankr.E.D.Ark.1982), *vacated sub nom. Lindsey v. Ipock,* 732 F.2d 619 (8th Cir.), *cert. denied, Cryts v. French,* 469 U.S. 881, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984).

**3.** *In re: Stein and Day, Inc.,* 83 B.R. 221 (Bankr. S.D.N.Y.1988); *In re: Kalpana Electronics, Inc.,* 58 B.R. 326 (Bankr.E.D.N.Y.1986).

**4.** 28 U.S.C. § 157 sets forth the procedures to be used by the bankruptcy court with regard to "core" and "non-core" matters. A bankruptcy judge may hear and determine all core proceedings and may enter orders and judgments accordingly. However, a bankruptcy judge may only hear a non-core proceeding, after which the bankruptcy judge must submit proposed findings of fact and conclusions of law to the District Court which must consider those proposed findings and conclusions *de novo* and enter a final order.

al determinations made by a bankruptcy court. *Collier on Bankruptcy,* ¶ 3.03[7] (15th Edition).

#### B.

■ The NYSHESC maintains that Judge Hayes erred in his finding that its actions constituted willful contempt. It argues that it assigned Ms. Haile's account to the United States Department of Education four months before she filed her bankruptcy petition and that retention of Ms. Haile's 1986 tax refund for offset purposes did not amount to willfulness. In fact, the NYSHESC submits that, because it was the federal government that had effectuated the offset by virtue of the prior assignment to the United States Department of Education, the NYSHESC is not in contempt.

■ An act of contempt is willful when it is made with knowledge of both the bankruptcy filing and the imposition of the automatic stay. *In re: Stewart,* 65 B.R. 195 (Bankr.W.D.N.Y.1986). However, formal notice of the imposition of the stay is not required if the parties have actual notice. *Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47, 52 (2d Cir.1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977). CBI and the Alan Joseph law office were the undisputed agents of the NYSHESC for purposes of collecting the unpaid student loan debt. They clearly had knowledge of Ms. Haile's bankruptcy and of the automatic stay because they had been notified both by telephone and in writing. That knowledge is imputed to the principal, the NYSHESC. *See, e.g., Mallis v. Bankers Trust Co.,* 717 F.2d 683, 689 n. 1 (2d Cir.1983). Because the NYSHESC had knowledge of the bankruptcy filing and of the automatic stay as imputed to it through its agents, its actions can be considered willful.

■ CBI and the Alan Joseph law office also claim that their actions did not constitute willful contempt in this case. However, based on the definition set forth in the *Stewart* case, Judge Hayes' finding of willfulness in this case was not clearly erroneous. Ms. Haile informed those appellants by telephone that she had filed for

bankruptcy. Subsequently, her attorney contacted those appellants by phone and confirmed those conversations in writing. In spite of that notice to CBI and the Alan Joseph law office, they nonetheless continued their efforts to collect from Ms. Haile. I see no reason to alter the determination of the bankruptcy court on these grounds.

The NYSHESC further claims that it did not receive Ms. Haile's 1986 tax refund because the offset was overseen by the United States Department of Education. This argument lacks merit because while, NYSHESC did not initially receive Ms. Haile's 1986 tax refund, it did gain the ultimate benefit of the offset when her account was later reassigned by the United States Department of Education. NYSHESC clearly benefited from the offset of Ms. Haile's 1986 tax refund.

#### C.

■ CBI and the Alan Joseph law office contend that they did not receive proper notice of the contempt proceeding in this action. Ms. Haile's notice of motion was filed on December 14, 1987. Although it was originally returnable December 21, 1987, that return date was adjourned to January 11, 1988, at which time it was heard. There is no evidence that any of the appellants were given improper notice of the proceedings. On January 11, 1988, there were appearances by Robert S. Cooper, Esq., for the debtor, Frederick J. Schreyer, Esq., for the NYSHESC, and by Alan Joseph, Esq., of the Alan Joseph law offices. He also was the attorney for CBI and the record of the proceedings demonstrates that Mr. Joseph spoke on behalf of CBI at that time. The record clearly demonstrates that notice was adequate.

#### D.

■ The appellants raise two issues as to the damages awarded by Judge Hayes as the result of his finding of willful contempt. First, the NYSHESC submits that the damages should have been apportioned by the bankruptcy court, arguing that it is entitled by contract to indemnification from

**56**

CBI and Alan Joseph. Appellee correctly asserts that this issue was never raised before the Bankruptcy Judge and therefore cannot properly be reviewed here.

Second, CBI contends that Ms. Haile did not demonstrate any significant damages attributable to it and that, therefore, Judge Hayes inappropriately granted sanctions against it. Again, this is a matter of apportionment as to which an appropriate request should have been made before the bankruptcy court. The matter not having been raised and passed on by the bankruptcy court, cannot be considered on this appeal.

### E.

■ The NYSHESC asserts that the United States is an indispensable party to this action because of the United States Department of Education's assignment of Ms. Haile's account. The NYSHESC claims that it was unable to properly implead the United States because of the "summary fashion in which this matter was handled" in the bankruptcy court. The NYSHESC had notice of the contempt proceedings well before the appearances on January 11, 1988. If it wished to join the United States as a party to the contempt proceeding based on the involvement of the United States Department of Education, it could have done so prior to the return date of the motion. Its failure to do so provides no basis for reversing Judge Hayes' determination.

### CONCLUSION

For the foregoing reasons I hold that the power to make contempt findings and impose sanctions thereon rests within the jurisdiction of the bankruptcy court and a contempt proceeding is a core matter for purposes of 28 U.S.C. § 157. Accordingly, because appellants have failed to show that his findings were clearly erroneous, the order of Judge Hayes entered January 29, 1988 from which this appeal arises, is affirmed in its entirety.

ALL OF THE ABOVE IS SO OR-DERED.