In re Gary Glenn WASWICK, Debtor.

Gary Glenn WASWICK, Plaintiff,

v.

STUTSMAN COUNTY BANK and Clifton Rodenburg, Defendants.

Bankruptcy No. 96–30595.
Adversary No. 97–7031.

United States Bankruptcy Court,
D.   North Dakota.

July 31, 1997.

Clifton G. Rodenburg, Fargo, ND, for pro se.

Max D. Rosenberg, Bismarck, ND, for Plaintiff.

Timothy Ottmar, Jamestown, ND, for Stutsman County Bank.

## ORDER

WILLIAM A. HILL, Bankruptcy Judge.

By Motion filed June 12, 1997, co-Defendant, Clifton Rodenburg (Rodenburg), seeks summary judgment in his favor dismissing the Plaintiff's Complaint against him. The Motion is resisted by the Plaintiff, Gary Glenn Waswick (Waswick), who on July 16, 1997, in connection with his reply to the Rodenburg motion, filed a cross-motion for summary judgment.

This adversary proceeding was commenced by the Plaintiff/Debtor Waswick's Complaint filed on May 1, 1997, alleging that the Stutsman County State Bank (Bank), a creditor, and its attorney, Clifton Rodenburg, violated the injunction created by this Court's discharge order, filed August 8, 1996, and are therefore in contempt of this Court.

The matter directly before the Court arises by Defendant Rodenburg's Motion and Plaintiff Waswick's Cross Motion for Summary Judgment. Filed on June 12, 1997, Rodenburg's Motion asserts that he did not have knowledge of Waswick's bankruptcy or discharge when he filed the state court collection action and that upon learning of the discharge, he ceased attempting to properly serve the summons or otherwise collect the debt. Therefore, in his view Waswick's Complaint fails as a matter of law to establish a claim under § 524(a)(2) of the Code. Waswick's Cross Motion, filed on July 16, 1997, asserts Rodenburg's actions constitute contempt and that the Bank's knowledge of Waswick's bankruptcy can be imputed to Rodenburg. Waswick further claims that even if the Bank's knowledge cannot be imputed, Rodenburg has a responsibility to check the bankruptcy court's files before taking action to collect on any debt.

Rule 56 of the Federal Rules of Civil Procedure governs the grant of summary judgment motions and is made applicable to bankruptcy proceedings by Fed. R. Bankr.P. 7056. Under Rule 56(c), summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr.P. 7056. The initial burden always falls directly on the movant to demonstrate the lack of any genuine issue of material fact, with the party opposing the motion to be given the full benefit of all favorable factual inferences. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Lower Brule Sioux Tribe v. State of South Dakota*, 104 F.3d 1017, 1021 (8th Cir.1997). From the affidavits and documents submitted in connection with the motion and cross-motion the undisputed facts are as follows:

### 1.

Waswick filed for Chapter 7 protection on May 13, 1996, and was granted a discharge on August 8, 1996. As it held a promissory note in the amount of $789.79, the Bank was a creditor listed on the mailing matrix and Schedule F. On January 23, 1996, prior to the filing of Waswick's bankruptcy petition, the Bank retained Rodenburg to collect on the promissory note upon which Waswick had defaulted. Rodenburg's records indicate his office sent Waswick collection letters on April 24, 1996, May 17, 1996 and June 1, 1996, all of which Waswick admits receiving yet neither he nor his attorney chose to respond to. Since these efforts were ineffective, Rodenburg then prepared a summons and complaint on September 19, 1996. Having mailed it with insufficient postage for restricted delivery, the summons and complaint were sent by regular certified mail. As a result, Joyce Jans, Waswick's girlfriend, signed the domestic return receipt on September 23, 1996.[1] In late September or early October, Rodenburg then received an undated letter from Waswick's attorney, Max Rosenberg, stating he received the summons and complaint served upon Waswick and that such action violated the injunction accorded Waswick as a result of the order of discharge entered August 8, 1996. Upon hearing this news, Rodenburg states by affidavit that he

---

1. Although Rodenburg's affidavit states that Ms. Jans signed the receipt on September 25, 1996, the date of delivery stamped by the post office is September 23, 1996.

instructed another collection administrator in his office, David Vangsness, to contact and assure Mr. Rosenberg that no further attempts to serve the summons or otherwise collect the debt would occur. Vangsness by affidavit states he left a message on Rosenberg's answering machine on October 2, 1996, to which Rosenberg did not respond. Rodenburg also advised his staff to close the Waswick file and had Vangsness notify the Bank of this. Rodenburg has not served any further pleadings, discovery requests or motions on either Waswick or Rosenberg. The only contact Rodenburg has had with Waswick or Rosenberg since early October 1996 was the service of the Complaint for this adversary proceeding on May 1, 1997. Attorney Rosenberg disputes Rodenburg's version of the early communications saying he had no contact with either Rodenburg or Vangsness until receiving a letter in May of 1997 when Rodenburg proposed dismissal of the present adversary proceeding. Attorney Rosenberg's legal assistant corroborates this stating she had no communication with either men except for a phone conversation with Vangsness and the May dismissal effort. Waswick, in seeking actual and punitive damages arising from the Bank's and Rodenburg's alleged willful and malicious actions in violation of the injunction created by the bankruptcy discharge, is asking the Court to find them in civil contempt of § 524(a)(2)[2].

### 2.

■ Section 524(a)(2) was enacted to continue post-discharge the temporary stay imposed by § 362 when a case is commenced. It replaces the automatic stay with a permanent injunction against enforcement of all discharged debts upon entry of the discharge. *In re Siragusa,* 27 F.3d 406 (9th Cir.1994).

■ Willful violation of the injunction imposed by § 524(a)(2) will warrant a finding of civil contempt. However, to find one in civil contempt of the § 524(a)(2) injunction, the burden rests with the movant to show by clear and convincing evidence that the offending creditor or entity had knowledge of the discharge and willfully violated it by continuing with the activity complained of *In re Andrus,* 184 B.R. 311, 314 (Bankr.N.D.Ill. 1995); *Louisiana Ed. Ass'n. v. Richland Parish School Bd.,* 421 F.Supp. 973 (1976). This legal standard for making out a contempt case under § 524(a)(2) is similar from that required in order to find a person in civil contempt of court. *See Hubbard v. Fleet Mortgage Co.,* 810 F.2d 778, 781 (8th Cir. 1987) (analyzing a bankruptcy court's finding of contempt according to civil contempt standards).

■ The factual issue as thus framed by the law is whether Rodenburg had or may be inferred to have had knowledge of the § 524 injunction and nonetheless chose to disregard it. Rodenburg maintains in his affidavit that he had no such actual knowledge—an assertion not disputed by Waswick. Waswick, however, charges that Rodenburg as attorney for the Bank, a scheduled creditor, is imputed with the Bank's knowledge of the bankruptcy filing. For this proposition he relies upon *Haile v. New York State Higher Educ. Services Corp.,* 90 B.R. 51 (W.D.N.Y. 1988) a case brought not for violation of the § 524 permanent injunction but rather for violation of the temporary § 362 injunction. In that case an attorney hired by a collection agency to pursue a claim of a student loan lender, commenced and persisted with various collection efforts despite being advised by both the debtor and her attorney of a Chapter 13 filing. Following accepted law, *Haile* held that a creditor is in civil contempt of the § 362 stay when, despite knowledge of the automatic stay, it pursues collection efforts. Noting that the attorney was the agent for the creditor and aware of the filing, the Court imputed the creditor as the agent's principal with that knowledge.[3] Although

---

**2.** Section 524(a) provides, in pertinent part: A discharge in a case under this title ... (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debt-
or, whether or not discharge of such debt is waived.

**3.** The theory, known as the "imputed knowledge rule," upon which imputation of knowledge from an agent to its principal rests is that, when the agent acts within the scope of the agency rela-

this is a correct statement of agency law, *Haile* does not stand for the converse proposition that knowledge of the principal is imputed to the agent. The implied knowledge rule of agency does not operate in the converse. An agent cannot be imputed with information which his principal has failed to give him. *S.O.G.–San Ore–Gardner v. Missouri Pacific R.R. Co.*, 658 F.2d 562, 567 (8th Cir.1981) (stating that it is well settled that a principal's undisclosed knowledge is not imputed to an agent); *Hunt Trust Estate v. Kiker*, 269 N.W.2d 377, 382 (N.D.1978) (stating that a principal's knowledge is not imputed to the agent). Accordingly, Waswick's argument that the Bank's knowledge should be imputed to its agent, Rodenburg, fails as a matter of law.

### 3.

■ Waswick's alternative argument appears to be that even if the Bank's knowledge cannot be imputed to Rodenburg, he, and presumably anyone engaged in collecting debts, has a responsibility to check the bankruptcy records before sending collection letters or commencing a collection action. Waswick cites no authority to support this argument nor can the court locate any.

■ Thorough and prudent collection practices include checking the bankruptcy court's records for those who have filed bankruptcy. Title companies routinely do this in creating and updating abstracts for real property. However, failure to do so does not necessarily constitute a violation of a court order warranting a finding of contempt. In order for a party to be held in civil contempt for violating a court order, the party must have actual knowledge of that order. *Hazen v. Reagen*, 16 F.3d 921, 924 (8th Cir.1994). Waswick already conceded that Rodenburg had no such knowledge. Accordingly, this argument also fails. Further, the Bank's knowledge cannot be imputed to Rodenburg for the reasons this Court previously stated.

This case is not dissimilar to the *In re Taylor* case. In that case a creditor's attorney, who had no knowledge of the bankruptcy, commenced an action for damages prepetition which resulted in the entry of a default judgment postpetition. *In re Taylor*, 190 B.R. 459, 460–61 (Bankr.S.D.Fla.1995). The debtor's attorney then sent the creditor's attorney a letter informing him that this action violated the automatic stay and that the creditor's attorney must request the default judgment be vacated. The creditor's attorney refused to do this. In determining whether this refusal constituted contempt, the court's analysis specified that **once notice was given that the petition relief had been filed**, the creditor's attorney's failure to undo the technical violation of the stay constituted contempt. *Id.* at 461 (emphasis added). It is well to note that the court's contempt finding focused upon when notice to the creditor's attorney was given and did not find the attorney in contempt in strict liability style simply because a default judgment was entered postpetition. Likewise in the present case, the undisputed facts state that when Rodenburg was finally apprised of Waswick's bankruptcy, he closed the file and discontinued all collection efforts, including trying to properly serve the insufficiently posted summons and complaint which most likely was dismissed for failure to prosecute.

Accordingly, and for these reasons, IT IS ORDERED that Defendant Clifton Rodenburg's motion for summary judgment is GRANTED and Plaintiff's cross motion for summary judgment is DENIED.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

---

tionship, there is identity of interests between principal and agent. The presumption upon which imputation rests is that the agent will perform his duty and communicate to his principal the facts that the agent acquires while acting within the scope of the agency relationship. 3 *Fletcher Cyc. Corp.* § 390 (rev. ed.1994); *Federal Deposit Insurance Corporation v. Deloitte & Touche*, 834 F.Supp. 1129, 1138 (E.D.Ark.1992).