In re Soutthasavatdy SIHARATH, Debtor.

Soutthasavatdy Siharath, Plaintiff,

v.

Citifinancial Services, Inc., and Peterson Fram & Bergman, P.A., Defendants.

Bankruptcy No. 02–41501. Adversary No. 02–4166.

United States Bankruptcy Court, D. Minnesota.

Nov. 6, 2002.

Mitchell R. Hadler, Vance O. Bushay, for plaintiff.

Esther E. McGinnis, St. Paul, MN, for Citifinancial Services, Inc.

Michael A. Klutho, Minneapolis, MN, for Peterson, Fram & Bergman, P.A.

## *MEMORANDUM ORDER GRANTING PARTIAL SUMMARY JUDGMENT*

ROBERT J. KRESSEL, Bankruptcy Judge.

This proceeding came on for hearing on October 30, 2002 on motions for summary judgment by the defendants. Mitchell R. Hadler and Vance O. Bushay appeared for the plaintiff. Esther E. McGinnis appeared for defendant Citifinancial Services, Inc. and Michael A. Klutho appeared for defendant Peterson, Fram & Bergman, P.A.

This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

### THE PARTIES

On March 19, 2002, Citifinancial Services, Inc. retained the Peterson Firm to collect from Soutthasavatdy Siharath the balance owing on a July 15, 1998 Disclosure Statement, Note and Security Agreement.[1] On March 27, 2002, Steven Bruns, an attorney with the Peterson Firm, checked the Minnesota bankruptcy court website to determine whether Siharath

---

1. One of the attorneys who handled this matter on behalf of the Peterson Firm was Esther E. McGinnis.

had filed bankruptcy. Upon finding that no bankruptcy was filed, Bruns mailed an initial letter to Siharath concerning her debt.

On April 24, 2002, Siharath filed a chapter 7 bankruptcy petition. Accompanying the filing of Siharath's chapter 7 petition, was a mailing matrix listing two correct addresses for Citifinancial.[2] With the filing of the chapter 7 petition and mailing matrix, Siharath also filed required schedules listing Citifinancial's unsecured prepetition debt.

On April 26, 2002, the Peterson Firm served a Summons and Complaint on Siharath for collection of the outstanding debt. On that date, neither the Peterson Firm nor Citifinancial knew of Siharath's bankruptcy petition. On April 27, 2002, the clerk mailed the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, and Deadlines to all creditors, including Citifinancial.

Siharath, in the meantime, did not respond to Citifinancial's Summons and Complaint nor did she contact either defendant and notify them of her bankruptcy petition. Receiving no response, the Peterson Firm sent Siharath an Affidavit of No Answer, Identification, Non–Military Status, Amount Due and Costs and Disbursements and an Affidavit of Lost Instrument and in Support of Attorney's Fees. The service letter also advised Siharath that Citifinancial was in the process of attempting to enter a default judgment against her. Again, Siharath did not respond to these documents and did not

inform the Peterson Firm of her bankruptcy filing.

By a letter dated June 6, 2002, Citifinancial attempted to notify the Peterson Firm of Siharath's bankruptcy filing and attempted to tell it to cease all collection activities.[3] Unfortunately, this letter was sent to Siharath instead of the Peterson Firm so the Peterson Firm still did not know about her bankruptcy. On June 24, 2002, the Hennepin County District Court entered a default judgment against Siharath and in favor of Citifinancial. On July 1, 2002, the Peterson Firm sent Siharath a notice of Intent to Levy on Wages after Ten Days. Shortly thereafter, Citifinancial successfully notified the Peterson Firm that Siharath had filed for bankruptcy. This was the first time the firm learned of her bankruptcy filing, and it stopped all debt collection efforts and did not implement the wage levy.

On or about July 17 or 18 of 2002, Vance Bushay, Siharath's bankruptcy attorney, called Esther McGinnis and asked her to vacate the default judgment entered against his client. On July 18, 2002, shortly after this conversation, McGinnis sent a signed Stipulation and Order for Vacation of Judgment to Bushay. Bushay did not sign or file the Stipulation nor did he otherwise communicate with McGinnis. Upon learning this fact, McGinnis attempted to vacate the judgment unilaterally.[4] On July 31, 2002, Siharath received her discharge. On August 6, 2002, Siharath filed a complaint against Citifinancial re-

---

**2.** The Peterson firm was not listed on the bankruptcy matrix.

**3.** The letter stated:
 Dear Sir(s): We have recently been notified that Soutthasazatdy Sihrath has filed for protection under the Federal Bankruptcy Act. Accordingly, we ask that you close your file and take no further action on this mat-

ter. We will file a Proof of Claim and take such other future actions as are necessary on this account. If the bankruptcy should be dismissed, we may ask for your assistance again on this case. Thank you for your efforts to date.

**4.** The judgment was finally vacated on October 28, 2002.

questing damages for its violation of the automatic stay. On August 28, 2002, Siharath filed an amended complaint adding the Peterson Firm as a defendant.

## PLAINTIFF'S CLAIMS

Siharath asserts that Citifinancial and the Peterson Firm violated the provision of the automatic stay found in 11 U.S.C. § 326(a)(1), (a)(5), and (a)(6), and asserts that such violations were also willful. She claims that because such violations were willful, she is entitled to recover under 11 U.S.C. 362(h) actual damages, including emotional distress damages, attorneys' fees, costs and expenses, as well as punitive damages. Siharath also argues that her attorneys are entitled to an award of enhanced attorney's fees. The defendants move for summary judgment on all of Siharath's claims.

## SUMMARY JUDGMENT

Summary judgment as set forth in Rule 56(c)[5] is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of material fact is genuine if it has a real basis in the record. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "A genuine issue of fact is material if it 'might affect the outcome of the suit under the governing law.'" *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The court is required to view all evidence in the light most favorable to the non-moving party and to give that party the benefit of all reasonable inferences to be drawn from the underlying facts disclosed in the pleadings. *Trnka v. Elanco Prod. Co.*, 709 F.2d 1223, 1225 (8th Cir.1983).

### *Burden of the Moving Party*

Procedurally, the movant has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record which show a lack of genuine issue. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. The moving party must show the court that there is an absence of evidence to substantiate the non-moving party's case. *Id.* at 325, 106 S.Ct. 2548. The movant discharges its burden by asserting that the record does not contain a triable issue and identifying that part of the record which supports the moving party's assertion. *City of Mt. Pleasant, Iowa v. Associated Electric Cooperative*, 838 F.2d 268, 273 (8th Cir.1988).

### *Burden of the Non–Moving Party*

When the moving party has carried its burden under Rule 56(c), the burden of production shifts to the non-moving party, and it must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. The non-moving party must go beyond the pleadings and by its own affidavits, depositions, answers to interrogatories, and admissions on file, establish that there are specific and genuine issues of material fact that warrant a trial. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. The non-moving party must establish specific significant probative evidence supporting its case. *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). If the evidence presented is merely colorable or is not significantly probative, the non-moving party has not carried its burden and

---

**5.** Applicable here by operation of Fed. R. Bank. P. 7056.

the court must grant summary judgment to the moving party. *See* Fed.R.Civ.P. 56(e).

After carefully reviewing the record, I conclude that the Peterson Firm has met its burden for summary judgment and that it is entitled to judgment as a matter of law on all of Siharath's claims. In addition, Citifinancial is entitled to summary judgment to the extent Siharath seeks punitive damages and enhanced attorney's fees.

## DISCUSSION

*The claims against the Peterson Firm*

Siharath first alleges that the Peterson Firm wilfully violated the automatic stay and continued to violate the stay until October 28, 2002, the date the default judgment against her was vacated. Siharath argues that because the Peterson Firm was the agent of Citifinancial, the knowledge Citifinancial possessed as of late April 2002 regarding her bankruptcy filing was imparted to the Peterson Firm, even if the firm in fact had no knowledge of the filing until early July of 2002. Thus, Siharath argues that even if the Peterson Firm did not intend to violate the automatic stay, it nevertheless willfully violated the stay because the Firm acted with knowledge of the bankruptcy filing and the automatic stay, and intended to perform the acts that violated that stay. As a consequence of this willful violation, Siharath argues that the Peterson Firm is liable to her for damages pursuant to § 362(h).

 Siharath is correct in stating that she does not have to prove that the Peterson Firm intended to violate the automatic stay to prove that the violation was willful under § 362(h). "A willful violation of the automatic stay occurs when the creditor acts deliberately with knowledge of the bankruptcy petition." *Knaus v. Concordia*

*Lumber Co., Inc. (In re Knaus)*, 889 F.2d 773, 775 (8th Cir.1989). Siharath, however, is incorrect in her statement of agency law. The agency theory articulated by her is based on the "imputed knowledge rule of agency." Pursuant to this rule, knowledge from the agent is imputed to its principal because when an agent acts within the scope of an agency relation, there is an identity of interests between the principal and his agent. *Waswick v. Stutsman County Bank (In re Waswick)*, 212 B.R. 350, 353 n. 3 (Bankr.D.N.D.1997). It is presumed that the agent will perform its duty and communicate to his principal the facts that the agent acquires while acting within the scope of the agency relationship. *Id.* The imputed knowledge rule of agency, however, does not operate in the converse, and the agent cannot be imputed with the information which its principal has failed to give it. *Id.* at 353. The Eighth Circuit Court of Appeals has also stated that "it is well settled that an agent may rely upon the representations of his principal and that the principal's undisclosed knowledge is not imputed to him." *S.O.G.–San Ore–Gardner v. Missouri Pacific R.R Co.*, 658 F.2d 562, 567 (8th Cir. 1981); *see also* Restatement (Second) of Agency §§ 320, 348 (1958). The Peterson Firm did not willfully violate the automatic stay when it commenced suit, sent the debtor notices, and sought the default judgment.

 After the Peterson Firm received knowledge of the petition it ceased all collection activities against Siharath, yet she argues that because the Peterson Firm had not vacated the default judgment in favor of Citifinancial until October 28, 2002, this non-action constituted a wilful violation of the automatic stay. First of all, to the extent the automatic stay protected Siharath, it terminated on July 31, 2002 when she received her discharge.

*See* 11 U.S.C. § 362(c)(2)(C). Therefore, any willful violation of the stay resulting from inaction could only have occurred between the early weeks of July, when the law firm first received notice of the case, and July 31, when Siharath received her discharge. The Peterson Firm's failure to vacate the judgment during this period was not a violation of the automatic stay.[6] Section 362(a)(1) precludes a creditor from commencing or continuing an action or proceeding against the debtor. The Peterson Firm did neither. The Peterson Firm immediately discontinued its actions and attempted to immediately vacate the judgment. It was only Siharath's attorney's refusal to sign the stipulation that prevented the law firm from successfully vacating the judgment. Section 362(a)(5) and (6) both prohibit acts, not inaction. The Peterson Firm did none of the prohibited acts. Moreover, since Siharath received a discharge on July 31, 2002, the default judgment entered against her in favor of Citifinancial was voided.[7] *See* 11 U.S.C. § 524(a)(1).

### The claims against Citifinancial

Siharath separately argues that Citifinancial willfully violated the automatic stay. She further argues that due to this willful violation, she is entitled to receive compensation from Citifinancial for actual damages, attorneys' fees, punitive damages, and enhanced attorneys' fees under § 362(h). On the punitive damages and enhanced attorneys' fees claims, I will grant summary judgment to Citifinancial, but otherwise deny its motion.

### Willful Violation

"A willful violation of the automatic stay occurs when the creditor acts deliberately with knowledge of the bankruptcy petition." *In re Knaus*, 889 F.2d at 775. Since Citifinancial had knowledge of the commencement of Siharath's bankruptcy case yet continued, through its agent (the Peterson Firm), to attempt collection of its debt, it willfully violated the automatic stay.

### Punitive Damages

An individual injured by a willful violation of the automatic stay may recover punitive damages under appropriate circumstances. *Farmers Home Administration v. Ketelsen (In re Ketelsen)*, 880 F.2d 990, 993 (8th Cir.1989). The cases interpreting the "appropriate circumstances" indicate that egregious, intentional misconduct on the part of the violator is necessary to support a punitive damages award. *Id.* While Citifinancial's violation of the automatic stay was willful as that word has been interpreted, it was not intentional and certainly was not egregious. Punitive damages are not warranted.

---

6. This case is distinguishable from cases under § 362(a)(3) where a creditor is exercising control over the debtor's property, which violation would continue as long as the creditor exercises the control. Thus the creditor would have a duty to stop violating the automatic stay by returning the property. *See In re Knaus*, 889 F.2d at 774–775. Similarly, in *In re Atkins*, where there was an arrest warrant out to help enforce a debt, the court in that case held that as long as the arrest warrant was extant then the action was continuing, thereby imposing an obligation on the creditor to discontinue the warrant. *Atkins v. Martinez (In re Atkins)*, 176 B.R. 998, 1008 (Bankr.D.Minn.1994). In contrast, here there was no continuing violation of the automatic stay that needed to be stopped.

7. In addition, Siharath pointed out during oral argument that the Eighth Circuit Bankruptcy Appellate Panel in *LaBarge v. Vierkant (In re Vierkant)*, 240 B.R. 317, 322–325 (8th Cir. BAP 1999), held that actions taken in violation of the automatic stay are void.

*Enhanced Attorney's Fees*

Siharath argues that her attorneys are entitled to an award of enhanced attorney's fees and expenses comparable to attorneys who practice outside the area of bankruptcy pursuant to 11 U.S.C. § 330(a). Siharath argues that this request is based on the exceptional performance and abilities of her attorneys in representing her, and on the fact that her attorneys have taken substantial economic risk in expending time and expenses in this case. She states that she is responsible for attorneys fees, costs and expenses that her counsel incurs in this case, however, she did not have funds to pay a retainer and there is a possibility that such fees, costs and expenses, if not awarded by the court, would be uncollectible.

■ First, I note that § 362(h) does not provide for an award of attorney's fees. It provides that a debtor injured by a willful violation of the stay may recover attorney's fees to the extent they are part of her damages. In other words, § 362(h) provides for recovery of damages *including* attorney's fees, not damages *and* attorney's fees.

■ Although it does not apply to the determination of attorney's fees under § 362(h),. courts have looked to cases under § 330 to help determine fees under § 362(h). Section 330 provides for fee awards to professionals as reasonable compensation for actual, necessary services. In determining what constitutes reasonable compensation under this section, most courts have adopted the formula used to calculate fees under various fee shifting statutes. *Novelly v. Palans (In re Apex Oil),* 960 F.2d 728, 731 (8th Cir.1992) (quoting *In re Manoa Fin. Co.,* 853 F.2d 687, 690 (9th Cir.1988)). Compensation under these statutes is based on the lodestar amount which, is the number of hours reasonably expended multiplied by a rea-sonable hourly rate. *Id.* Because this lodestar amount presumably reflects (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; and (4) the results obtained, these factors normally cannot serve as independent bases for increasing the fee award above the lodestar amount. *Id.* at 731–732. The applicant for attorneys fees has the burden of proving that fee enhancement was warranted by unusual circumstances. *In re Atlas,* 202 B.R. 1019, 1021–1022 (Bankr. S.D.Fla.1996). Thus, the fee applicant must do more than outstanding service and results. The applicant must also establish that the quality of service rendered and the results obtained were superior to what one reasonably should expect in light of the hourly rates charged and the number of hours expended. *Id.* at 732; *see Blum v. Stenson,* 465 U.S. 886, 899, 104 S.Ct. 1541, 1549, 79 L.Ed.2d 891 (1984). The Supreme Court has noted that it would be a rare and exceptional case where a fee enhancement would be allowed. *Blum,* 465 U.S. at 899, 104 S.Ct. at 1549.

■ Siharath has not met the burden for justifying enhanced attorney's fees. This is not a particularly complex cases. The case involves simple facts and issues generally found in many violation of the automatic stay cases.

## ORDER

THEREFORE, IT IS ORDERED:

1. Defendant Peterson, Fram & Bergman's motion for summary judgment is granted.

2. The plaintiff shall recover nothing from Peterson, Fram & Bergman on her complaint.

3. Defendant Citifinancial's motion for summary judgment is granted in part.

4. The plaintiff may not recover punitive damages or enhanced attorney's fees.

5. Except as provided in paragraph 4, defendant Citifinancial's motion for summary judgment is denied.